Sep 03 2008 3:07PM                                      7187835853                    p.2

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9\4\2008

**LAW OFFICE OF ELIZABETH M. FINK**
36 PLAZA STREET • BROOKLYN, NEW YORK 11238
(718) 783-3682 • FAX (718) 783-5853 • WWW.F...

Sarah Kunstler
Gideon Orion Oliver
Of Counsel

**MEMO ENDORSED**

September 3, 2008

~~UNDER SEAL~~

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: **U.S. v. Aafia Siddiqui**
    08 Cr. 826

Dear Judge Berman,

*[Endorsement:]* Filed at the direction of the Court on consent.

SO ORDERED
Date: 9/4/08
Richard M. Berman, U.S.D.J.

   As per my conversation with the Court's deputy, Christine Murray, I am writing this letter in advance of our appearance tomorrow to apprise the Court of certain highly sensitive issues and facts that make this case and this submission *sui generis*. I ask that it be filed under seal because it concerns, among other things, Dr. Aafia Siddiqui's mental and physical health.

**BACKGROUND**

   Born in 1972, Dr. Siddiqui lived in the United States from the time she was seventeen. She emigrated from Pakistan to live with her brother[1] in Texas and attended the University of Houston. After her freshmen year, Dr. Siddiqui transferred to MIT where she graduated *summa cum laude* with a BS in biology. She then received a PH.D from Brandeis in neuroscience. Her thesis explored how children learn and her intention was to find a career in education. During her stay in Massachusetts, Dr. Siddiqui married a Pakistani anesthesiologist and they had three children, all of whom are American citizens.

UNDER SEAL
The Honorable Richard M. Berman
September 3, 2008
Page 2 of 6

In March of 2003, Dr. Siddiqui was visiting her family in Pakistan with her children. She embarked on a journey with her children from Karachi to Islamabad and disappeared. It is the government's position that she abandoned her children and became an Al-Queda operative in Pakistan and Afghanistan. In contrast, there is widespread belief that Dr. Siddiqui was abducted in 2003 and held as a prisoner, suffering torture and inhumane treatment, until she was released to be arrested in Afghanistan on July 17, 2008.[2]

By all accounts, Dr. Siddiqui was detained by Afghani police on July 17, 2008 with an 11 year old boy.[3] Parts of the interrogation by the Afghanis of Dr. Siddiqui and the boy were filmed and can be viewed on *YouTube*. On July 18, 2008, as a result of the incident that is the subject of this indictment, Dr. Siddiqui was shot at least once in the abdomen. She spent two weeks at the notorious Bagram Airforce Base where she was labeled an "enemy combatant" and held in four point restraints with FBI agents monitoring her 24 hours a day.[4]

---

[2] Yesterday, I spoke to an investigative reporter for the Washington Post who informed me that she had reliable sources in both the American and Pakistani government who have verified that Dr. Siddiqui was taken into custody by Pakistani military intelligence in 2003. According to her sources, Dr. Siddiqui was then transferred to CIA custody where she was held in rendition for the last five years with at least one if not two of her children.

[3] The child reportedly denied that Dr. Siddiqui is his mother, stating he is an orphan. On August 14, 2008, the FBI, realizing the likeness between the boy and a passport picture of her child, performed DNA tests, the preliminary results of which are that the boy was her son. Even though he is an American citizen, he remains in Afghani custody.

[4] After providing the government with a HIPPA release, I was given incomplete medical records regarding Dr. Siddiqui's time in US custody in Afghanistan. I have attached documents that describe the monitoring of Dr. Siddiqui and the restraints.

<u>UNDER SEAL</u>
The Honorable Richard M. Berman
September 3, 2008
Page 3 of 6

## APPOINTED CJA COUNSEL

On August 4, 2008, Dr. Siddiqui was arrested in Afghanistan and brought to the United States. On August 5, 2008, the day Dr. Siddiqui was presented in this district, I was the CJA attorney on duty in Magistrate's Court and was appointed to represent her.

Since my appointment, due to the circumstances described below, I have been unable to build an attorney-client relationship with Dr. Siddiqui. I first visited with her in the court pens on August 5, 2008. The next day, my associate, Gideon Oliver, visited Dr. Siddiqui at MDC with an attorney for the Siddiqui family. The non-contact visit took place in the receiving and discharge area at MDC. Their conversation took place through the food slot. Dr. Siddiqui was in a wheelchair and she was not strip searched at any time.

## THE STRIP SEARCHES AND DR. SIDDIQUI'S REFUSAL TO SEE HER LEGAL TEAM

The next day, Sarah Kunstler, Gideon Oliver and I visited Dr. Siddiqui for over two hours under the same circumstances as the day before. While far from ideal, we were able to communicate with Dr. Siddiqui even though we were interrupted constantly by people walking through the area. Upon information and belief, after our visit, Dr. Siddiqui was strip searched for the first time. I have enclosed an MDC document reflecting that search.

Two days later, Gideon Oliver visited Dr. Siddiqui with two members of the Pakistani diplomatic corps — one from the New York Consulate and the other from the Embassy in Washington. For that visit, Dr. Siddiqui was handcuffed behind her back, made to walk from the old building to the new building without her wheelchair, strip-searched, and placed in a cell separated from her visitors by bars covered in plexiglass. Their conversation took place through a metal grill. The process was repeated at the end of the visit.

Dr. Siddiqui has refused all subsequent visits because she will not submit to being strip searched. Recovering from an abdominal gunshot wound with a large surgical

UNDER SEAL
The Honorable Richard M. Berman
September 3, 2008
Page 4 of 6

incision, it is quite painful for her to bend over, squat and cough. In addition, Dr. Siddiqui is a devout Muslim. It is against her religious beliefs to strip naked in front of strangers. Finally, Dr. Siddiqui has been traumatized substantially over the past two months and for the five years she suffered gross deprivations of her human rights. Strip searches are, in her mind, a continuation of that torture.

As this Court knows, I have had three decades of practice in difficult cases. I have done a lot of prison law and have dealt with hundreds of clients who suffered from Post Traumatic Stress Disorder (PTSD) and other psychological disorders. My perception of Dr. Siddiqui is that she is severely traumatized. Based on multiple factors and investigation, I have a good faith basis to believe that she is a victim of torture, and that the strip searches exacerbate an existing acute psychological disorder.

Dr. Siddiqui has been evaluated to a limited extent by psychological staff at MDC. Psychological reports, which have been enclosed with this letter, reveal that she has been crying in her cell, neglecting her food tray, and making bizarre requests, including a request that the turkey from her meal tray be placed in the refrigerator so that it could be sent to her son. According to the reports, Dr. Siddiqui shared her fear with psychological staff that her son was being starved and tortured. A staff psychologist at MDC concluded that

> Although her concerns about him being starved and tortured sound somewhat paranoid on the surface, it is also possible that they represent an accurate portrayal of Ms. Siddiqui's experiences with detainment prior to arrival into BOP custody. Furthermore, Ms. Siddiqui's history of exposure to traumatic events is unknown. Therefore, PTSD and other acute Axis I disorders cannot be ruled out.

Although I have had a psychologist, Dr. Antonia Cedrone, appointed to examine Dr. Siddiqui by Chief Magistrate Judge Pitman, I have been unable to arrange for Dr. Cedrone to visit with Dr. Siddiqui or to conduct an

UNDER SEAL
The Honorable Richard M. Berman
September 3, 2008
Page 5 of 6

examination because of MDC's requirement that Dr. Siddiqui be strip-searched before any visit. At my request, Dr. Cedrone has reviewed the psychological reports prepared by MDC staff and prepared an analysis, a draft of which I have reviewed, and the final version of which I will deliver to the Court tomorrow. Based on the information in the MDC reports and anecedotal information, Dr. Cedrone is of the opinion that "Dr. Siddiqui's mental condition has deteriorated significantly since her confinement at MDC," and concurs with the MDC psychologist that Dr. Siddiqui is "showing signs of Post Traumatic Stress Disorder and other acute mental disorders."

Dr. Siddiqui is completely isolated from counsel, psychological help, and her family. She is permitted one telephone call to her family every 30 days and one legal telephone call every two weeks, though MDC Legal Department has facilitated weekly legal phone calls thus far. Arrangements have been made for Dr. Siddiqui to speak weekly with a family friend and attorney, Farha Ahmed. Ms. Ahmed is a Texas attorney and does not practice criminal law. The week before last, Ms. Ahmed traveled from Texas to visit with Dr. Siddiqui at MDC. Consistent with her refusal to be strip-searched, Dr. Siddiqui refused the visit. In addition, Dr. Siddiqui has to be strip searched before she can call her family. She has refused to be searched and continues to be totally isolated from her family.

Dr. Siddiqui does not want to speak to me by telephone. I have heard from Ms. Ahmed that Dr. Siddiqui does not understand the charges against her, and is being poisoned against me by staff members at the MDC, who have told her not to trust me. I do not know if this is true, or if it is the product of Dr. Siddiqui's mental condition. Because I cannot visit with Dr. Siddiqui, I cannot establish trust or communicate effectively with my client. Because the appointed psychologist cannot visit with Dr. Siddiqui, we have no way of further evaluating her psychological condition.

At this point, I do not believe that Dr. Siddiqui is competent to participate in her own defense or to stand trial in this case. Dr. Siddiqui requires further evaluation including examinations by medical professionals

UNDER SEAL
The Honorable Richard M. Berman
September 3, 2008
Page 6 of 6

specializing in the treatment of torture victims, and a course of treatment that will help her regain her mental health.

In addition to her untreated and deteriorating mental health condition, Ms. Siddiqui has significant medical issues relating to her recent gun shot injuries and her five year disappearance. For example, she has experienced significant abdominal pain, and an elevated pulse. She has been taken out of MDC for a CAT scan, but a complete medical and gynecological workup has not been done.

In her letter, Dr. Cedrone recommends that Dr. Siddiqui "be transferred to a less restrictive setting where she would not be subjected to strip searches and where she could receive more extensive care for her medical condition." We share this opinion, and believe that the ideal solution would be to transfer Dr. Siddiqui to the prison ward at Bellevue Hospital. At Bellevue, Ms. Siddiqui will receive medical and psychological care and treatment, including treatment at its nationally recognized Center for the evaluation and treatment of victims of torture.

If I am to provide Dr. Siddiqui with the effective assistance of counsel and establish trust, there needs to be a way for me to meet with her, share discovery, and prepare for trial. It is imperative that a solution be found that will allow me to build a relationship with Dr. Siddiqui, provide her with the expert care she needs, investigate what happened to her during her five year absence and prevent further psychological deterioration.

Thank you for your kind consideration in this matter.

Respectfully yours,

Elizabeth M. Fink
Attorney for Dr. Aafia Siddiqui