



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/22/08

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 19, 2008

**By Hand Delivery**

Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

## MEMO ENDORSED
*P. 6*

Re:   **United States v. Aafia Siddiqui**
        **08 Cr. 826 (RMB)**

Dear Judge Berman:

        The Government respectfully submits this letter in response to the Court's questions at the September 4, 2008 conference regarding (1) the defendant's competency to stand trial, and (2) the defendant's refusal, thus far, to appear in court. The defense has responded to the Court's questions by letter dated September 16, 2008. The parties are due to appear for a conference on September 23, 2008, at 2:00 p.m. It is unclear whether the defendant intends to appear.

        In short, the Government believes that a competency hearing and complete psychiatric evaluation of the defendant is warranted. The record thus far is sparse — mainly because the defendant has refused to cooperate with medical and psychiatric professionals — but based on the initial Court-ordered psychological examination by a Bureau of Prisons' psychiatrist, which resulted in an "Axis I diagnosis of Depressive Type Psychosis," the Government submits, in an abundance of caution, that the best course is for the Court to find that there is reasonable cause to believe that the defendant may be suffering from a mental disease or defect rendering her incompetent to enter a plea or stand trial. Accordingly, the Government moves under 18 U.S.C. § 4241(a) for a competency hearing, and under 18 U.S.C. §§ 4241(b) and 4247(b) for an antecedent psychiatric examination, performed over the course of the full 30 days permitted by statute, and a corresponding psychiatric report. As a result, the defendant's refusal to appear for arraignment need not be addressed until her competency is determined.

Honorable Richard M. Berman
September 19, 2008
Page 2

## Background

      The defendant is charged in a seven-count Indictment with: (1) attempted murder of United States nationals; (2) attempted murder of United States officers and employees; (3) use of a firearm during the commission of crimes of violence; and (4) four counts of assault of United States officers and employees.  These charges relate to a July 18, 2008 incident in Ghazni, Afghanistan, during which the defendant attempted to shoot and kill United States Army and Federal Bureau of Investigation personnel who were preparing to interview her.

      On August 4, 2008, the defendant was arrested in Afghanistan by FBI agents, who transported her to the Southern District of New York, where she was presented the next day on a criminal complaint and ordered detained.  The case was assigned to Your Honor after the Indictment was returned on September 2, 2008.  An arraignment and pretrial conference was scheduled for September 4, 2008.  The defendant did not appear for the conference, apparently because she refused to submit to standard prison security measures associated with the movement of prisoners — namely, "strip searches," to use defense counsel's terminology.

      During her relatively short period of detention thus far, the defendant has been completely uncooperative, not only with the Court, but with prison officials, including medical, psychiatric and psychological personnel.  Prison records previously filed with the Court by the defense demonstrate the defendant's consistent refusal to accept medical and mental health assistance and treatment from prison doctors and staff.  The defendant's oft-repeated explanation for this recalcitrance has been her counsel's advice not to cooperate with the prison mental heath team.

      Nonetheless, a prison psychiatrist was able to provide the aforementioned initial diagnosis of the defendant at the Court's request.  (*See* Order dated September 8, 2008 and Letter to the Court from Warden Cameron Lindsay of the Metropolitan Detention Center ("MDC"), dated September 10, 2008).  The diagnosis was based, however, on limited interaction with the defendant.  For example, the defendant initially stated that "she did not wish to speak with a psychiatrist or a psychologist"; the defendant refused to answer the psychiatrist's questions regarding sleep, appetite and food intake; and the defendant "refused to continue the interview, preventing [the psychiatrist] from assessing the presence or absence of hallucinations."  (Warden Lindsay Letter, at 2).  Since that time, the defendant has continued to refuse medical and mental heath aid, according to prison officials.

## Relevant Legal Standards

      The standard for determining whether a defendant is competent to stand trial is a familiar one. "The defendant must have (1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well as factual

Honorable Richard M. Berman
September 19, 2008
Page 3

understanding of the proceedings against him.'" *United States* v. *Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Dusky* v. *United States*, 362 U.S. 402 (1960) (per curiam)). "It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States* v. *Vamos*, 797 F. 2d 1146, 1150 (2d Cir. 1986). Rather, to support a finding of incompetency, "[t]he mental illness must deprive the defendant of the ability to consult with his lawyer 'with a reasonable degree of rational understanding' and to understand the proceedings against him rationally as well as factually." *Nichols*, 56 F.3d at 412 (quoting *Dusky*, 362 U.S. at 402). In determining competency, the district court may properly rely on a number of factors, including medical opinions and the district court's observation of the defendant's comportment. *Nichols*, 56 F.3d at 411; *United States* v. *Hemsi*, 901 F.2d 293, 295-96 (2d Cir. 1990).

Under Section 4241, courts are required to hold a competency hearing only when there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). In the absence of "reasonable cause," courts have no obligation to hold a competency hearing. *See, e.g., Nichols*, 56 F.3d at 414 ("In deciding that an evidentiary hearing is unnecessary, a court may rely not only on psychiatrists' reports indicating competency but also on its own observations of the defendant"); *Chichakly* v. *United States*, 926 F.2d 624, 631-32 (7th Cir. 1991) (no need for competency hearing, despite defendant's past depression and mental and emotional problems, where court saw no evidence of incompetency and defense counsel did not request hearing). And because "[t]he necessity for a competency hearing varies in each case, depending upon a number of factors concerning defendant's behavior and inferences which might be drawn from psychiatrists' reports," *United States ex. rel. Mireles* v. *Greer*, 736 F.2d 1160, 1165 (7th Cir. 1984), the "[d]etermination of whether there is 'reasonable cause' to believe a defendant may be incompetent rests in the discretion of the district court." *Vamos*, 797 F.2d at 1150 (employing abuse of discretion standard in reviewing district court's decision not to order a competency hearing); *United States* v. *Oliver*, 626 F.2d 254, 258 (2d Cir. 1980) (same).

### Discussion

Against this backdrop, the Government submits that a complete examination of the defendant and competency hearing is warranted. Such an examination and hearing is the best method to establish an adequate record for a competency determination under the current circumstances. Apart from the MDC psychiatrist's diagnosis, the record is essentially barren with respect to competency: mental health professionals at the prison have had little meaningful contact with the defendant; treatment records — many of which the Court has seen, and all of which have been analyzed by a psychiatrist retained by the Government — are subject to varying interpretations; the Court has had no opportunity to observe the defendant; and defense counsel

Honorable Richard M. Berman
September 19, 2008
Page 4

has had no recent face-to-face interaction with the defendant, and minimal telephone contact. Law enforcement personnel who spent more than 20 hours with the defendant on the flight from Afghanistan to New York carried on relatively normal chit-chat with her and observed no sign of mental illness, in their lay opinions. The diagnosis of the MDC psychiatrist, given the limited interaction with the defendant upon which it was based, is best described as preliminary and best understood as a signal to conduct further psychiatric examination.

The Government submits that a complete examination, conducted over the full 30 days permitted by statute, followed by a competency hearing, provides the best opportunity under the circumstances of this case for the Court to make a full and fair determination of the defendant's competence to stand trial and assist in her defense. It is imperative that the examination be conducted over a long period of time. This is so because, in the Government's view and in the view of our retained psychiatrist, continued spot examinations at the MDC — or, for that matter, anything less than a complete 30-day examination — will invariably be met by the same resistance already exhibited by the defendant and will, thus, be less than useful. The defendant is less likely, in our view and in the view of our psychiatrist, to resist the inquiry of mental heath professionals if subjected to a longer-term evaluation.

The defense does not address competency in their September 16, 2008 letter. Instead, they challenge the adequacy of medical and psychiatric care being administered to the defendant at the MDC. The defense insist that the defendant must be transferred out of the federal prison system to a New York state-run facility. But this contention fails procedurally and on the merits.

The claim fails at the threshold because it is a challenge to prison conditions — despite the generic invocation of "the Constitution" (*See* Letter to the Court from Elizabeth M. Fink, Esq., dated September 16, 2008, at 3) — which requires exhaustion of administrative remedies. *See United States* v. *Abu Ali*, 528 F.3d 210, 244 (4th Cir. 2008) ("We do not have jurisdiction to consider [the prison conditions] claim. . . . The defendant must exhaust his administrative remedies before challenging the [prison conditions] in federal court."); *see also Preiser* v. *Rodriguez*, 411 U.S. 475, 489-90 (1973) (prisoners cannot "evade [the exhaustion] requirement by the simple expedient of putting a different label on their pleadings").

Moreover, the law simply does not permit a detained defendant to dictate the conditions of her confinement. On the contrary, as Your Honor has found, "'[i]t is well established that mere differences in opinion regarding medical treatment do not give rise to an Eighth Amendment violation' and that '[a]lthough a prisoner is entitled to medical care, he does not have the right to the treatment of his choice.'" *Brown* v. *Selwin*, 250 F. Supp. 2d 299, 308 (S.D.N.Y. 1999) (quoting *Muhammad* v. *Francis*, 1996 WL 657922, at *5 (S.D.N.Y. Nov.13, 1996)); *see also Montez* v. *McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) ("[T]here is no federal constitutional right to incarceration in any particular prison or portion of a prison."); *Bellamy* v.

Honorable Richard M. Berman
September 19, 2008
Page 5

*Mount Vernon Hosp.*, 2008 WL 3152963, at * 4 (S.D.N.Y. Aug. 5, 2008) ("[A] prisoner has no right to the treatment of his choice."); *Allen* v. *Cooley*, 2006 WL 2376927, at * 3 (N.D.N.Y. Aug. 16, 2006) ("The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation.") .

        At bottom, the defense is also simply wrong: while they suggest that the medical and psychiatric treatment being administered at the MDC is inadequate, the treatment records demonstrate the opposite.  Since the defendant arrived at the MDC, she has received a substantial stream of quality medical and psychiatric care, as the records bear out, despite her own resistance to those seeking to treat her.  There is no reason to believe that the defendant's treatment is in any way substandard.  The defense certainly has not made such a showing.  *See United States* v. *Robinson*, 409 F.3d 979, 981 (9th Cir. 2005) ("Though [the defendant's] physical condition creates special needs, he has not shown that the needs are extraordinary in the sense that the Bureau of Prisons will be unable to accommodate his condition and provide appropriate medical care.").

        Finally, the defense's suggested transfer away from federal custody is unrealistic and logistically unreasonable, given the serious nature of the charges in this case.  The impetus for the request is the defense's expectation that conditions at Elmhurst Hospital would be more to the defendant's liking.  Presumably, this is based on their assumption that security measures would be more relaxed outside of a federal prison setting.  They are wrong.  The United States Marshals Service ("USMS") would still be responsible for the defendant, even if she were transferred to a state-run facility, because she would continue to maintain the status of a federal pretrial detainee.  The security measures that the USMS would insist upon, if the defense request is granted, would certainly be as restrictive as those currently faced by the defendant, given the nature of the charges against her, and would likely be more restrictive in view of the fact that she would be outside of a federal prison setting.  This is a factor that the defense has obviously not taken into account, either in formulating their preference for a state-run facility, or in calculating the receptiveness of Elmhurst Hospital to taking on the defendant.  More fundamentally, housing the defendant in a non-federal facility would impose a substantial fiscal burden on the USMS, an unreasonable cost for USMS to bear given the obvious adequacy of MDC's custodial conditions.

        In sum, the defense request is procedurally flawed and otherwise untenable.  It also misses the point, which is how best to determine the defendant's competency to stand trial and assist in her defense.  In this case, given the defendant's reluctance to cooperate with those attempting to examine her, the best way to make this determination is by a complete competency examination, to be followed by a hearing.

Honorable Richard M. Berman
September 19, 2008
Page 6

## Conclusion

    For all of the foregoing reasons, the Government respectfully requests that the Court enter the attached proposed order, which (1) directs that a psychiatric examination of the defendant be conducted over a 30-day period at a suitable facility to be determined by the Bureau of Prisons; (2) requires preparation of a psychiatric report; (3) sets a competency hearing at a date to be determined by the Court; and (4) excludes time under the Speedy Trial Act so the Court may determine the competency of the defendant.

         Respectfully submitted,

         MICHAEL J. GARCIA
         United States Attorney

By:        _____
         David Raskin
         Christopher L. LaVigne
         Assistant United States Attorneys
         (212) 637-2635/2325

cc:  Elizabeth M. Fink, Esq. (by facsimile)

Clerk to docket.

SO ORDERED:
Date: 9-22-08
Richard M. Berman, U.S.D.J.