# DAWN M. CARDI
## & ASSOCIATES

Associate
Chad L. Edgar

Of Counsel
Robert B. Anesi

**BY ECF**

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                    Re:    United States v. Aafia Siddiqui, 08 Cr. 826 (RMB)

Dear Judge Berman:

      We write on behalf of defendant Aafia Siddiqui in response to the government's August 14, 2009, letter (the "government letter"). In that letter, the government appears to argue that the current issues regarding Dr. Siddiqui's representation should, or even can, be resolved by holding a court conference at which she will be asked how she "wishes" to proceed – either (1) remain with her court-appointed attorneys; (2) substitute the new set of attorneys hired by the Pakistan government; (3) proceed with court-appointed attorneys and the privately retained attorneys as co-counsel; or (4) proceed pro se.

      We respectfully submit that the government's proposal blissfully ignores the backdrop of mental health issues associated with Dr. Siddiqui, especially her delusional disorder which is particularly focused on the court system and any attorneys associated with it. With respect to Dr. Siddiqui, this Court, which in the course of finding Dr. Siddiqui competent to stand trial has nevertheless recognized that she has "some mental health issues," has the difficult challenge of balancing Dr. Siddiqui's right to determine her own fate with respect to the choice of the assistance of counsel and the limitations that must be placed upon that self-determination when there is a basis to believe that the defendant is suffering from serious mental health issues. If the Court believes, as we do, that Dr. Siddiqui is suffering from serious mental health issues, then the government's request that she come to court and simply state her "wishes" with respect to who she wants to represent her is ill-advised at best.

      After having represented her for the past six months, we believe that she cannot make a decision in her own self-interest, and in the spirit of governing ethical rules that address attorney conduct where a client is suffering from diminished mental capacity, we believe we are required to take protective action on her behalf. Here, that means that we respectfully request on her behalf that the attorneys that the Pakistan government has

retained for her – Linda Moreno, Charles Swift, and Elaine Sharp (hereafter "proposed retained counsel") – be made co-counsel of record.

Beginning with the September 4, 2008 conference before the Court, concerns about Dr. Siddiqui's mental health and her competence to make legal decisions have existed. Despite this Court's finding that she is competent to stand trial, those concerns remain. Indeed, the Court noted in its competency decision that Dr. Siddiqui, while she was ultimately competent to stand trial under the Dusky standard, appeared to have "some mental health issues." Order Finding Defendant Competent To Stand Trial at 25. Also, we trust that we have made the Court aware of the fact that Dr. Siddiqui's delusional disorder appears to have as one of its foci the anti-Muslim animus of the United States court system and all of those associated with it, including court-appointed attorneys. To her mind, according to Dr. L. Thomas Kucharski, the mental health expert retained on behalf of Dr. Siddiqui, the outcome of her trial is pre-determined by those whose purpose is to destroy her. See Forensic Psychological Evaluation of L. Thomas Kucharski, Ph.D. dated June 20, 2009 at 16-17.

In addition, Dr. Siddiqui's resistance to leaving her cell – premised on her objection to strip-searching – would render any court conference problematic if its goal were to elicit from Dr. Siddiqui a dispassionate and objective position with respect to which counsel she would choose. In its letter, the government qualifies its objection – noting that dual representation (CJA and private) should not ensue "without further inquiry." Government Letter at 2. Thus, at the very least, the form of inquiry does not at this stage need to involve forcing Dr. Siddiqui to appear in court, which increases her agitation. Counsel – both CJA and proposed – should have a further opportunity to speak with her without the need for a compelled court appearance.

Thus, Dr. Siddiqui's current impasse with respect to whom she should retain for counsel cannot, as suggested by the government, be cured simply by asking her who she wants as her counsel. The impasse requires not only careful analysis, but also that at the end of the day the Court allow those with her best interests in mind – her family and current attorneys of record both of whom are now familiar with her mental health issues – to act on her behalf as per Rule 1.14 of the New York Rules of Professional Conduct in light of the fact that she is suffering from diminished mental capacity.

While the Supreme Court has not directly addressed the situation here, when a defendant suffers from a serious mental disorder and is therefore unable to choose between different proposed counsel, Faretta v. California, 422 U.S. 806 (1975) and Indiana v. Edwards, 128 S.Ct. 2379 (2008) provide a framework for understanding a court's role in analyzing to what extent a criminal defendant should and should not be allowed to set the terms of her own defense. In Faretta, the Supreme Court held that a criminal defendant's choice with respect to her defense must be honored – including the choice to go without representation even if that choice may be to her own demise –

because of "'that respect for the individual which is the lifeblood of the law.'" Faretta, 422 U.S. at 834 (quoting Illinois v. Allen, 397 U.S. 337, 350-51 (1970)).

In Edwards, however, the Supreme Court established limits to Faretta in the context of a criminal defendant who had a history of serious mental health disorders. There, the Supreme Court held that the court can and should place limits on the legal decisions made by a mentally ill defendant found to be competent under Dusky because the standard for competency to stand trial by no means precludes the possibility that a defendant like Dr. Siddiqui nonetheless suffers "from severe mental illness." Edwards, 128 S. Ct. at 2388.

Significantly, the Edwards Court noted a psychiatrist's reaction to viewing a defendant trying his own case after he was found to be competent under Dusky: the psychiatrist asked, "'How in the world can our legal system allow an insane man to defend himself?'" Edwards, 128 S. Ct. at 2387 (quoting an amicus brief submitted to the Court). Here, we might ask a similar question: how can the government ask Dr. Siddiqui to choose who wants to represent her when her delusional disorder is triggered by any issue related to the United States Court system?

In the context of this case, the lesson of Faretta and Edwards is that criminal defendants should be allotted as much choice as to the key decisions arising in the course of their legal proceeding as their mental health condition allows. It is clear that someone who suffers from a serious delusional disorder, as we believe Dr. Siddiqui does, cannot be allowed to represent herself. Since her delusional disorder focuses on the fact that court-appointed attorneys are merely pawns in a court system that is determined to destroy her, and making her continue with such counsel may result in her refusal to assist them, continuing in the current course with only court-appointed counsel will result in an unfair trial. See Edwards at 2387 (viewing the Constitution's primary criminal law objective as providing a fair trial).

In light of her delusional disorder, Dr. Siddiqui's participation in her own proceeding will likely depend on the nature of her attorneys – if they are seen as not affiliated with the court system (in other words, privately retained), she may cooperate. As the three attorneys who are seeking to become members of her defense team were all retained by the Pakistan government on her behalf, they are unaffiliated and thus untainted by the court-appointed system. Significantly, Dr. Siddiqui has already had a lengthy conversation with two members of this three-person team seeking to represent her. In our view, a fair trial here depends on Dr. Siddiqui's access to the proposed retained counsel.

Therefore, we request that the Court secure Dr. Siddiqui's access to proposed retained counsel by making them co-counsel of record. The Court may do so based on the following two bases.

First, such an order would be justified by the inherent power of district courts outlined in Edwards, which licenses courts to make decisions about a criminal defendant's choices regarding representation where there is evidence that the defendant suffers from a serious mental disorder. Here, the Court can assure the fairest trial possible by ordering retained counsel as co-counsel of record, thereby providing the most promising scenario for Dr. Siddiqui's participation. In light of the history of Dr. Siddiqui's indecision regarding who should represent her, we respectfully submit that we should remain attorneys of record to ensure that there is ready and willing counsel to proceed to trial should any subsequent issues emerge about Dr. Siddiqui's choice of counsel to assist her.[1]

Second, the Court may grant our request with the understanding that it is a so-called protective action that we are invoking as attorneys who must encroach upon their client's decision-making process because of her diminished capacity. See Rule 1.14 of the New York Rules of Professional Conduct; see also Rule 1.14 of the Model Rules of Professional Conduct (the same). Rule 1.14 provides in relevant part:

> (b) When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator or guardian.

Thus, Rule 1.14 clearly contemplates situations like the present, in which our client appears incapable of making a decision based on her own best interest with respect to who should represent her. In such situations, Rule 1.14 authorizes an attorney to make a decision on behalf of the client with diminished capacity. It further authorizes us to consult with individuals like the proposed retained attorneys who have the legal ability to protect the interest of our client. As the rule also makes clear, our decision to effect "protective action" must be guided by the "wishes and values of the client to the extent known," and respect "the client's family and social connections." Comment 5 to Model Rules of Professional

---

[1] Also, in its letter, the government fails entirely to address the plain language of Article 36 of the Vienna Convention for Consular Relations (set forth in Mr. Swift's August 11, 2009, letter), which provides that representation provided by a consulate be afforded absent the defendant's express opposition – which opposition has not been expressed here by Dr. Siddiqui. That also conforms more closely with the language in United States v. Bennett, 2008 WL 356529 (E.D. Tenn. Jan. 30, 2008), cited by the government in its letter, at 2 (defendant not eligible for CJA counsel "when Defendant's family retained counsel and Defendant has not refused such counsel and has expressed satisfaction with counsel").

Conduct.[2] Here, the decision to accept the services of the proposed retained counsel appears to be in line with the "wishes and values" of Dr. Siddiqui who appears to be contemplating providing assistance to legal counsel in a manner that she has not contemplated to date. Further, proposed retained counsel has the complete support and confidence of Dr. Siddiqui's family (as expressed privately to both us and proposed counsel).

In light of the family's support of the proposed retained counsel and the indication it provides of Dr. Siddiqui's own "wishes and values," we respectfully submit that they should be made co-counsel of record and immediately be granted full access to all discovery provided and yet-to-be provided in this case.

We note that the government recognizes that what we propose – a co-counsel arrangement between court-appointed and privately retained attorneys – has been approved by the one court that addressed the issue in depth. See government letter at 2 (citing United States v. Zelenka, 112 F. Supp. 2d 708 (M.D. Tenn. 1999). There, the court noted that the primary concern was whether public monies were being misused in the form of the provision of legal services to a defendant who actually had financial resources to retain his own attorney. See id. at 712. Thus, the inquiry for the court was whether the defendant had any control over the funds that were being used to retain an attorney on his behalf. See id. at 715. Once the court established that the defendant had no control over the funds that were used to retain an attorney on his behalf and he remained unable to retain an attorney with money within his own control, he remained eligible as that term is defined under the Court Justice Act. See id. at 716. Here, we have been assured by proposed retained counsel that the money that secures their services is from the government of Pakistan and not within the control of Dr. Siddiqui. Thus, Dr. Siddiqui, too, remains eligible for a court-appointed attorney under the Court Justice Act. Notably, as mentioned above, Dr. Siddiqui's long-standing indecisiveness about whom she should retain as her attorney also counsels in favor of our remaining on the case. As we have served as lead counsel on this complex case for six months, we have the ability to assume control once again of Dr. Siddiqui's defense should she need our assistance between now and trial currently scheduled for October 19, 2009.

While our remaining on the case may appear like a waste of public monies, the Court surely understands that considerably more public monies would be expended if we remained on the case as sole counsel. To prepare adequately for a trial of an incident that occurred in Afghanistan, we would need considerable outlays of money to travel to Afghanistan ourselves to review the alleged crime scene; to hire investigators to review the alleged crime scene; to interview witnesses of the alleged crime; to secure testimony in pretrial depositions of possible Afghanistan and other foreign witnesses; to hire experts to translate documents in foreign languages; to hire experts in ballistics and forensics,

---

[2] We note that Rule 1.14 of the New York Rules of Professional Conduct and the Model Rules of Professional Conduct are exactly the same. Therefore, Comment 5 to Rule 1.14 of the latter is fully applicable.

amongst other areas of expertise. All of these expenditures would no longer be sought on behalf of Dr. Siddiqui pursuant to the Court Justice Act. In the end, any concern about misuse of public monies in retaining proposed retained counsel would clearly be without basis.

Likewise, the government's reference to a "potential conflict," while conceding it does not know of any existing conflict, see government letter, at 3, does not require any action by the Court. Counsel, both appointed and proposed, are well aware of their obligations should any conflict arise. Certainly there is not any requirement for such "conflict" allocution in cases in which a third party provides payment, and there is no need – and the government has not pointed to any articulable basis – for any such allocution in this case.

## Conclusion

For all of the foregoing reasons, we respectfully submit that the Court recognize proposed retained counsel as Dr. Siddiqui's additional attorneys of record and our co-counsel and that they be authorized access to all discovery disclosed by the government to date and yet-to-be disclosed, including classified material.

Respectfully submitted,

Dawn M. Cardi

cc: Linda Morena (by email)
Charles Swift (by email)
Elaine Sharp (by email)
Aafia Siddiqui (by mail)