UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA :

       - v. - : 08 Cr. 826 (RMB)

AAFIA SIDDIQUI, :

       Defendant. :

------------------------------x

# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR A RULE 15 DEPOSITION OF ABDUL QADEER

PREET BHARARA
United States Attorney for the
Southern District of New York,
Attorney for the United States of
America

CHRISTOPHER L. LAVIGNE
ERIC B. BRUCE
Assistant United States Attorneys

- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

    - v. -                                        :          08 Cr. 826 (RMB)

AAFIA SIDDIQUI,                              :

    Defendant.                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR A RULE 15 DEPOSITION OF ABDUL QADEER

The Government respectfully submits this memorandum of law in opposition to the defendant's Motion for a Rule 15 Deposition of Abdul Qadeer, Chief of Counterterrorism for the Afghan National Police in Ghazni, Afghanistan.[1] Put simply, the defendant's motion completely fails to make the showing required to justify the exceptional remedy of a Rule 15 deposition, especially one to be taken in the middle of a war zone. With only the thinnest of facts as support, and without even considering less dangerous alternatives, the defense proposes that defense lawyers, prosecutors, and a court reporter set up a formal deposition in the middle of war-torn Afghanistan. Their motion should be denied or, at the very least, held in abeyance until the Court and counsel can consider other more reasonable alternatives.

---

[1] This individual is also known by the name Abdul Qadeer Pshedwall.

1

## APPLICABLE LAW

By the terms of Rule 15 itself, pre-trial depositions in criminal cases are reserved for "exceptional circumstances." Fed. R. Crim. P. 15(a)(1); see United States v. Cohen, 260 F.3d 68, 78 (2d Cir. 2001); see also United States v. Drogoul, 1 F.3d 1546, 1551 (11th Cir. 1993) ("[d]epositions generally are disfavored in criminal cases"). Rule 15 contemplates "that in criminal cases depositions will be used 'only in exceptional situations,' (Advisory Committee's Note to Rule 15(a)); that is, Rule 15(a) does not constitute a mandatory automatic provision requiring the Court to order the deposition of any foreign witness." United States v. Birrell, 276 F. Supp. 798, 822 (S.D.N.Y. 1967). To establish that "exceptional circumstances" exist, the "movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." United States v. Cohen, 260 F.3d at 78; see also United States v. Johnpoll, 739 F.2d 702, 709 (2d Cir. 1984).

The unavailability of a prospective witness "is to be determined according to the practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial." United States v. Johnpoll, 739 F.2d at 709. The efforts of the movant to produce the witness at trial are judged by a reasonableness standard. Id.; United States v. Oudovenko, 2001 WL 253027, at *4 (E.D.N.Y. 2001) (affirmations of counsel stating that witnesses were unwilling to testify at trial did not constitute good faith effort to produce witnesses). Courts should not accept the representations of counsel on the facts relating to unavailability if those representations are either conclusory or speculative. United States v. Whiting, 308 F.2d 537, 541 (2d Cir. 1962); United States v. Varbaro, 597 F. Supp. 1173, 1181 (S.D.N.Y. 1984) ("Although [Rule 15] does not necessarily require a showing of certainty that a witness will be unavailable, surely it requires a showing of a specific reason why the witness might not be available.").

2

Rule 15 also requires that the proffered testimony be "material to the case." Johnpoll, 739 F.2d at 709. In this context, "material" has been defined as "highly relevant to a central issue in the case...." United States v. Grossman, 2005 WL 486735, *3-4 (S.D.N.Y. 2005) (quoting Drogoul, 1 F.3d at 1556). This means that where a defendant seeks authorization for a Rule 15 deposition, he must at a minimum make "some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant." United States v. Kelley, 36 F.3d 1118, 1125 (D.C. Cir. 1994); see also, e.g., United States v. Whiting, 308 F.2d at 541 (affirming denial of Rule 15 motion where showing of materiality to defense was "vague and indefinite"). "[A] defendant typically demonstrates the 'exceptional circumstances' necessary for success on a Rule 15(a) motion by some preliminary showing that the testimony will exculpate him." United States v. Esquivel, 755 F. Supp. 434, 439 (D.D.C. 1990). As indicated by the foregoing, the defendant bears the burden of establishing the materiality of the testimony he proffers. See United States v. Kelley, 36 F.3d at 1125; Drogoul, 1 F.3d at 1552.

Finally, in considering whether the testimony is necessary to prevent a failure of justice, courts also consider whether there are substantial countervailing factors militating against the taking of the depositions. See, e.g., Johnpoll, 739 F.2d at 709; Drogoul, 1 F.3d at 1556.

## **DISCUSSION**

In their motion, the defense contends that the deposition of Abdul Qadeer prior to trial is appropriate because "in all likelihood he is unavailable for trial" and he supposedly "has exculpatory evidence material to the case." Def. Mot. at 1. Neither of those assertions, however, have been established by the defense motion.

3

### A. The Defense Has Not Established That Abdul Qadeer Can Provide Exculpatory Testimony During the Trial of This Matter.

As a threshold matter, the defense has not come close to establishing that Abdul Qadeer could provide exculpatory information concerning the shooting incident at the heart of this case. The Government has interviewed Abdul Qadeer twice regarding the incident in question, on August 25, 2008 and on October 17, 2008. During his first interview, Abdul Qadeer explained that he heard gunshots in the room and then saw Americans diving towards the curtain where the gunshots were emanating from. 8/25/08 FD-302 Report at 2.[2] Although he did not see who fired the shots, he was clear that he heard several shots and saw the Americans respond by rushing towards the curtain. Id. This is completely consistent with the Government's theory of the case that the defendant fired the M-4 rifle from "the portion of the room behind the curtain, which was now drawn slightly back." See Complaint at ¶ 5.d. Depending on Abdul Qadeer's position in the room at the moment the defendant fired the M-4, it is easy to understand why he may not have been able to see the defendant firing the M-4 from his particular angle because she was still behind the curtain which separated the room into two halves. See Photograph, attached hereto as Exhibit A, of the room where the shooting occurred. In the pandemonium that ensued after the shots rang out, Abdul Qadeer further explained that he immediately dropped to the floor, was stepped on as he made his way to the exit, and that "his main objective was to exit the room." 8/25/08 FD-302 Report at 2. Thus, it is completely logical that, if he was not looking in the direction where the defendant fired the M-4 at the precise moment she fired the weapon, in the complete chaos that erupted afterwards, Abdul Qadeer was more

---

[2] The FD-302 Report referred to herein is being provided to the Court and defense counsel, with a request that it be filed under seal. The defense has previously requested of the Government that reports containing the defendant's statements not be publicly filed, and the FD-302 report contains certain statements of the defendant. We have agreed to honor the defense request until it can be ruled on by the Court.

concerned with exiting the room than with identifying who had fired the rifle.

The notes from Abdul Qadeer's second interview on October 17, 2008 further illuminate what he was thinking during the incident.[3] During that interview, Abdul Qadeer explained that he was thinking that the defendant "has the American's rifle and she is going to kill everyone. . . . I had to get out of the kill zone." Thus, at most, Abdul Qadeer is a witness who was present when the shooting incident occurred, but was not in a position to see what others saw. That certainly does not make him an exculpatory witness.

And the defense has not proven otherwise. As support for their motion, they attach the Declaration of Charles Swift, who generally describes what he heard during a recorded interview of Abdul Qadeer. The defense do not provide a transcript of the interview. Nor do they provide a copy of the recorded interview for the Court to consider so that Your Honor can evaluate first-hand exactly what Abdul Qadeer said during this interview, and whether it is truly exculpatory.

This failure of proof dooms the defense request for a Rule 15 deposition. Under these circumstances, they simply cannot meet their burden of establishing that Abdul Qadeer could provide exculpatory testimony during this case. See Whiting, 308 F.2d at 541 (affirming denial of Rule 15 motion where showing of materiality to defense was "vague and indefinite"); Kelley, 36 F.3d at 1125 (defendant required to make "some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant"). The motion for a Rule 15 deposition should be denied in its entirety.

### B. The Defense Has Not Established That Abdul Qadeer Is Unavailable.

Under the applicable case law, the defense also bears the burden of establishing that the prospective witness is unavailable. At this point, the defense has offered nothing more than

---

[3] A formal FD-302 report was not produced after this interview.

conclusory assertions that Abdul Qadeer is unavailable. These conclusory assertions are insufficient as a matter of law and certainly do not justify sending defense lawyers, prosecutors, and a court reporter into the middle of a war zone where the violence is escalating on a daily basis. Whiting, 308 F.2d at 541. The simple truth is that no one knows yet if Abdul Qadeer is unavailable, or whether he is willing to come to New York to testify.

If the Court does not simply deny the defense motion for its complete failure of proof as to materiality, therefore, the Government alternatively proposes exploring less dangerous alternatives before the Court even considers ordering a Rule 15 deposition in Afghanistan. The Government has interviewed Abdul Qadeer twice and he has been cooperative. Before anyone is put in harm's way to take his deposition in Afghanistan, the Government submits that a far more prudent course of action is to determine whether Abdul Qadeer is willing to travel to New York to be deposed prior to trial and to testify at trial.[4] We have submitted a request with the FBI's Legal Attache in Afghanistan to contact the Afghan authorities and Abdul Qadeer, to propose such an arrangement and find out if he is willing to travel to New York for these purposes. If he is, his testimony can be preserved for use at trial, should it be deemed admissible by the Court, without endangering anyone. Moreover, under these circumstances, Your Honor could preside over such a deposition to rule on objections as they arise.

---

[4] The defense has expressed concern about simply relying on a promise by Abdul Qadeer to appear for trial, in case he were to change his mind at the last minute. The Government is therefore proposing that we find out whether Abdul Qadeer is willing to submit to a pre-trial deposition in New York and to subsequently appear for trial, rather than simply seeking his commitment to appear at trial and relying on him to appear. So long as Abdul Qadeer submitted to a pre-trial deposition in New York, the defense would not have to worry that he might not also appear at trial, assuming his testimony from the deposition were deemed admissible by the Court at trial.

The Government respectfully submits that this alternative should be fully explored before the Court even considers ordering a Rule 15 deposition in Afghanistan.[5]

## CONCLUSION

For all of the foregoing reasons, the defendant's motion for a Rule 15 deposition of Abdul Qadeer should be denied or, at most, held in abeyance while the Court and the parties consider less dangerous alternatives.

Dated: New York, New York

September 18, 2009

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
CHRISTOPHER L. LAVIGNE
ERIC B. BRUCE
Assistant United States Attorneys
(212) 637-2325/2219

---

[5] Given the time constraints in responding to the defense motion, the Government has not even had the opportunity to consult with the Department of Defense ("DOD") concerning the feasibility and risk assessment regarding the defense proposal for this deposition. Obviously, none of the parties will be able to travel to Ghazni, Afghanistan without DOD approval and assistance.

## CERTIFICATE OF SERVICE

ERIC B. BRUCE, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury that a true and correct copy of the foregoing was served via electronic mail on the below-listed date on:

| | |
|---|---|
| Dawn M. Cardi, Esq.<br>2 Park Avenue<br>New York, NY 10016 | Elaine Whitfield Sharp<br>Whitfield Sharp & Sharp<br>196 Atlantic Avenue<br>Marblehead, MA 01945 |
| Linda Moreno<br>P.O. Box 10985<br>Tampa, FL 33679 | Charles Swift<br>Swift & McDonald PS<br>2003 Western Ave., Suite 330<br>Seattle, WA 98121 |

Dated: New York, New York
September 18, 2009

_____
Eric B. Bruce

**Exhibit A**

