UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA,

08 Cr. 826 (RMB)

- against -

**REDACTED**

AAFIA SIDDIQUI,

Defendant.

-----------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AAFIA SIDDIQUI'S OMNIBUS PRETRIAL MOTIONS**

DAWN M. CARDI & ASSOCIATES
Dawn M. Cardi, Esq.
Chad L. Edgar, Esq.
Two Park Avenue, 19th Floor
New York, New York 10025
Tel.: 212.481.7770
Fax: 212.684.3008
*Attorneys for Aafia Siddiqui*

Linda Moreno, Esq.
P.O. Box 10987
Tampa, FL 33697
Tel. (813) 247-4500
Fax (813) 386-6211
*Attorney for Aafia Siddiqui*

SWIFT & MCDONALD, P.S.
Charles Swift
2003 Western Avenue, #330
Seattle, WA 98121
Tel. (206) 441-3377
Fax (206) 448-2252
*Attorney for Aafia Siddiqui*

Elaine Whitfield Sharp, Esq.
196 Atlantic Avenue
Marblehead, MA 01945
Tel. (781) 639-1862
Fax (781) 639-1771
*Attorney for Aafia Siddiqui*

**TABLE OF CONTENTS**


Table of Contents ....................................................................i

Argument ....................................................................1

I. The Court Should Dismiss Count One of the Indictment....................................1

II. The Court Should Dismiss Count Two And Subordinate Counts Three through Seven.........................................4

III. The Court Should Strike Paragraphs One Through Four Of The Indictment As Surplusage ...............................................8

IV. Dr. Siddiqui's Statements To Afghan Authorities Should Be Suppressed .........10

V. The Government Concedes That Dr. Siddiqui's Statements To American Authorities Were Improperly Obtained...............................13

VI. Status Of Motion Regarding Counsel Visits At The Metropolitan Detention Center ...............................................14

Conclusion ....................................................................14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

UNITED STATES OF AMERICA,

- against -

08 Cr. 826 (RMB)

**REDACTED**

AAFIA SIDDIQUI,

Defendant.

--------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AAFIA SIDDIQUI'S OMNIBUS PRETRIAL MOTIONS**

This Reply Memorandum Of Law is respectfully submitted in further support of defendant Aafia Siddiqui's Omnibus Pretrial Motions submitted to this Court on September 8, 2009.

**Argument**

**I. The Court Should Dismiss Count One of the Indictment**

Government counsel correctly points out in their opposition brief ("Gov't. Opp.") that 18 U.S.C.§2332(b) was not among those charges included in the complaint and that defense counsel's statement to the contrary, see Memorandum of Law In Support of Defendant Aafia

Siddiqui's Omnibus Pretrial Motions ("Def. Br.") at 6, is inaccurate. Defense counsel appreciates the clarification and sincerely regrets the error.[1]

The aforementioned notwithstanding, the undisputed facts strongly suggest that defendant Aafia Siddiqui ("Dr. Siddiqui") was held for purposes of prosecution under 18 U.S.C. § 2332(b) for a substantial period of time prior to issuance of the certification. Although the Grand Jury proceedings for violation of 18 U.S.C. §2332(b) did not commence until after issuance of the certification,[2] it is clear that had the defendant not been seized, transported to the United States against her will, and confined, that she would not currently be before this Court to answer to the allegations contained in Count One. Furthermore, the facts alleged in support of Count One of the Indictment, and those alleged in the complaint filed weeks earlier, are nearly identical, and there is no indication that any new evidence relevant to Count One was obtained during the period between the seizure and the indictment.

It is well established that prosecution of an individual is initiated by arrest, or by the filing of formal charges, whichever comes first. <u>See</u> <u>U.S. v. Marion</u>, 404 U. S. 307, 313 (1971). Whereas Dr. Siddiqui was seized outside of the United States and held in connection with the allegations contained in Count One of the Indictment since on or about July 31, 2008, it follows

[1] Government counsel did not provide a copy of the Attorney General's certification until the evening of September 7, 2009, which was a federal holiday (Labor Day) and the day before briefs were due. In the subsequent haste to complete the corresponding brief in time to comply with the filing deadline, defense counsel inadvertently overlooked the fact that 18 U.S.C. §2332(b) was not included in the complaint.

[2] Neither the indictment nor the corresponding Attorney General's certification indicate the time of day that either document was issued. If Grand Jury proceedings on Count One were initiated prior to issuance of the certification, then this would be in conflict with the statute – even if the Attorney General's certification were issued later that same day. However, the defendant takes government counsel at his word that the written certification was issued prior to commencement of Grand Jury proceedings for violation of 18 U.S.C. §2332(b).

as a matter of logic that prosecution of Dr. Siddiqui, under 18 U.S.C. §2332(b), had been "undertaken" at that point.[3]

Certification by the Attorney General is required before a prosecution under 18 U.S.C. §2332 may be "undertaken" 18 U.S.C. §2332(d). There is nothing in the language or history of 18 U.S.C. §2332 to indicate that Congress would permit the certification requirements of 18 U.S.C. §2332(d) to be waived if charges are pending against the defendant.[4] To the contrary, to seize a citizen in a foreign country, render her to the United States, and leave her languishing in an American jail – actions with dire implications for international relations - while the Attorney General ponders whether or not the acts of which she is accused were connected to terrorism, would be inconsistent with the express intent of Congress.[5] Whereas it is clear from the facts alleged in the complaint that at the time the government transported Dr. Siddiqui to the United States, they had already taken steps to prosecute her under 18 U.S.C. §2332(b), certification of the Attorney General was required prior to that undertaking and, having failed to comply with that requirement, extraterritorial jurisdiction for that charge cannot stand.

---

[3] See also 18 U.S.C. §2131(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . *in connection with such charges.")* (emphasis added).

[4] Strict compliance with this statutory mandate is of particular importance where, as here, questions remain as to whether extraterritorial jurisdiction exists with respect to the other charges contained in the complaint –i.e., those which formed the ostensible basis for Dr. Siddiqui's seizure and transport to the United States.

[5] The legislative history of §2332 emphatically states that the purpose of the Attorney General's certification is to ensure that the Act is not applied to normal street crime or barroom brawls. CONF. REP., supra, at 87-88, reprinted in 1986 U.S. CODE CONG. & ADMIN. NEWS at 1960-61. See also, United States v. Yousef, supra at 86, quoting McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 21 (1963) (internal quotations omitted) ("In determining whether Congress intended a federal statute to apply to overseas conduct, an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains").

**II. The Court Should Dismiss Count Two**
**And Subordinate Counts Three through Seven**

We would note from the outset that defense counsel's challenge to the extraterritorial application of sections 111, 924(c) and 1114 of Title 18 in the context of an alleged assault on a soldier while in a war zone is "novel" (the government's word) only because the government is for the first time invoking these sections in such a context. See Gov't Opp. at 11. In this instance, to be fair, we credit the government with novelty rather than ourselves.

As for the government's attempt to "eviscerate" our argument by noting that the team that came to interview Dr. Siddiqui was comprised of some persons who were not in the "uniformed services" – agents of the Federal Bureau of Investigation, for example – we must remind the government that where their indictment invokes the sections in dispute, United States Army Officer Two is identified as the main target of assault. See Indictment, ¶ 8, 10, 18. While the government may wish that the presence of non-uniform federal employees turned the so-called Interview Team into the investigatory and/or law enforcement team protected by these statutes, we respectfully submit that the substantial presence of United States military persons comprising this Interview Team broadcasts loudly and clearly that this was a military operation occurring in a war zone. Thus, contrary to the government's argument, the fact that the visit to Dr. Siddiqui by United States military personnel was a military operation places this case clearly beyond the holdings in United States v. Benitez, 741 F.2d 1312 (11th Cir. 1984), United States v. Bin Laden, 92 F. Supp. 2d 189 (S.D.N.Y. 2000), and United States v. Al Kassar, 582 F. Supp. 2d 488 (S.D.N.Y. 2008).

In divining whether Congress intended section 1114 of Title 18 to be used in the context of assaults on United States military troops in war zones abroad, both parties have focused on the words "(including any member of the uniformed services)" that were added to section 1114 in

the 1996 Amendment. See Gov't Opp. at 12. For the government, these words somehow make "plain" that the provision assumes extraterritorial application because it contemplates the indictment of those who assault United States servicemen deployed to war zones abroad because that is where they "primarily face danger." See Gov't Opp. at 12.

But the government's interpretation is not in accord with the history of section 1114. Until the amendment of 1996, section 1114 was principally a list of federal officers and employees, beginning with United States federal judges, moving to United States Attorneys and their assistants to United States marshals and then to officers and employees of non-uniform agencies like the Federal Bureau of Investigation, Postal Service, Secret Service and the Drug Enforcement Agency. See 1994 version of section 1114 annexed hereto as Exhibit "A". A cursory glance at this version of section 1114 makes it abundantly clear that the officers and employees contemplated by the statute are those associated with investigation and law enforcement and not military operations.

In the 1996 Amendment, the language of which is the same as the current language, Congress clearly wished to abandon the use of a list that enumerated officers and employees of the United States covered by the statute. In its place, Congress offered a statute that used general language that would be construed in line with the list that preceded. Presumably because some of the enumerated officers and employees in the pre-1996 statute were those who wore uniforms – Coast Guard members and officers of the Park Service, for example – the present language of "(including any member of the uniformed services)" was added to ensure they were covered by the statute.

The 1996 Amendment must be viewed as merely editorial in intent (i.e., replacing enumeration with general terms) because there was absolutely no pronouncement of a radical

change in the sweep of this statute to include extraterritorial applications such as assaults on United States military personnel engaged in war abroad in the discussion of the purpose and legislative history of the Act of which the 1996 Amendment was a small part. See Senate Report No. 104-179 annexed hereto as Exhibit "B". Nor is there any discussion of the larger significance of the 1996 Amendment where it is proposed in the actual bill. See language of the 1996 Amendment as it appeared in Public Law 104-132 annexed hereto as Exhibit "C". Thus, the plain language of section 1114, both pre- and post-1996 Amendment, indicates that its application was limited to investigatory and law enforcement officers and employees, and most definitely not those engaged in military operations abroad.

We respectfully submit that our more confined interpretation of section 1114 is in line with the principle of Murray v. Charming Betsy, 6 U.S. (2 Cranch) 64 (1804) in that it does not conflict with "the law of nations." United States v. Yousef, 327 F.3d 56 (2d Cir. 2003) (citing Murray v. Charming Betsy). If the government's argument is to be viewed as the correct one, then any foreigner whose nation is at war with the United States who attacks any member of the United States military is amenable to criminal proceedings in the United States pursuant to section 1114. Not only does such a scenario not make sense, it contravenes international law in the form of the Geneva Convention, which views enemy combatants as protected persons.[6]

Article 4 of the Third Geneva Convention generally protects prisoners of war for their combatant activities, and particularly Articles 89 and 92 of the Third Geneva Convention. Article 92 makes a prisoner of war who attempts to escape and is recaptured before having made

6

good such an escape liable only to disciplinary punishment prescribed under Articles 89 and 90.[7] Articles 89 and 90 limit disciplinary punishment to 30 days of confinement and Article 97 further prescribes that prisoners may not be transferred to a penitentiary establishment to undergo disciplinary procedure therein. Accordingly, a prisoner of war that attempts to escape by grabbing a weapon and firing on his captors would certainly risk being killed or injured himself, and liable for 30 days disciplinary punishment should he be re-captured, but he would not be facing attempted murder charges. Even if Dr. Siddiqui were judged not to be a prisoner of war, she would nevertheless be protected under the Fourth Geneva Convention protecting persons in occupied territories.

If not a combatant, Dr. Siddiqui would almost certainly be judged as a saboteur under the facts presented by the government, or as a person under definite suspicion of activity hostile to the security of the Occupying Power. Article 5 of the Fourth Geneva Convention indicates that such persons shall not be deprived of the rights of fair and regular trial prescribed by the present Convention.[8] Article 66 of the Convention permits the occupying power to hand the accused

---

[7] Article 92 provides that "a prisoner of war who attempts to escape and is recaptured before having made good his escape in the sense of Article 91 shall be liable only to a disciplinary punishment in respect of this act, even if it is a repeated offence."
Article 90 provides that "the duration of any single punishment shall in no case exceed thirty days. Any period of confinement awaiting the hearing of a disciplinary offence or the award of disciplinary punishment shall be deducted from an award pronounced against a prisoner of war."
Article 97 provides that prisoners of war shall not in any case be transferred to penitentiary establishments (prisons, penitentiaries, convict prisons, etc.) to undergo disciplinary punishment therein." All of the above Articles from the Geneva Convention are available at http://www.icrc.org/ihl.nsf/7c4d08d9b287a42141256739003e636b/6fef854a3517b75ac125641e004a9e68.

[8] Article 5 provides that "Where in the territory of a Party to the conflict, the latter is satisfied that an individual protected person is definitely suspected of or engaged in activities hostile to the security of the State, such individual person shall not be entitled to claim such rights and privileges under the present Convention as would, if exercised in the favour of such individual person, be prejudicial to the security of such State. Where in occupied territory an individual protected person is detained as a spy or saboteur, or as a person under definite suspicion of activity hostile to the security of the Occupying Power, such person shall, in those cases where

over to a properly constituted, non-political military court on the condition that said courts sit in the occupied countries.[9] Accordingly, the Geneva Convention specifically forbids what has been done in Dr. Siddiqui's case, that is, to transfer her to a civilian tribunal not sitting in the occupied territory.

In order to avoid a collision between the Geneva Convention and section 1114 of Title 18 of the United States Code, the latter cannot be viewed as criminalizing attacks of United States military personnel engaged in military operations in a theater of war by perceived enemy combatants.

## III. The Court Should Strike Paragraphs One Through Four Of The Indictment As Surplusage

As this Court has repeatedly observed, the charges against Dr. Siddiqui essentially comprise a straightforward crime of attempted murder. In line with this view, the defense moved to strike the paragraphs of the indictment that did not relate to the charged misconduct. The government acknowledged in their opposition brief that Rule 7 of the Federal Rules of Criminal Procedure permits the court to strike "surplusage" from an indictment upon the defendant's motion. The test associated with Rule 7(d) is equally straightforward. A motion to strike surplusage from an indictment will be granted where the language is not relevant to the offenses

---

absolute military security so requires, be regarded as having forfeited rights of communication under the present Convention. In each case, such persons shall nevertheless be treated with humanity and, in case of trial, shall not be deprived of the rights of fair and regular trial prescribed by the present Convention. They shall also be granted the full rights and privileges of a protected person under the present Convention at the earliest date consistent with the security of the State or Occupying Power, as the case may be." Available at http://www.icrc.org/ihl.nsf/7c4d08d9b287a42141256739003e636b/6756482d86146898c125641e004aa3c5

[9] Art. 66. In case of a breach of the penal provisions promulgated by it by virtue of the second paragraph of Article 64 the Occupying Power may hand over the accused to its properly constituted, non-political military courts, on condition that the said courts sit in the occupied country. Courts of appeal shall preferably sit in the occupied country. Available at http://www.icrc.org /ihl.nsf/ 7c4d08d9b287a42141256739003e636b /6756482d86146898 c125641e004aa3c5.

and is either prejudicial or inflammatory. See United States v. Mulder, 273 F.3d 91, 99 (2d Cir. 2001) (citing United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990)). If, on the other hand, the evidence of the allegation is admissible and relevant to the charge, then "regardless of how prejudicial the language is, it may not be stricken." Scarpa, 913 F.2d at 1013.

As the defense set out in the initial brief, allegations of uncharged criminal conduct are relevant as background if that conduct meets one of the following conditions: 1) it arises out of the same transaction or series of transactions as the charged offense; or 2) if it is inextricably interwoven with the charged offense; or 3) if it is necessary to complete the story of the charged offense. See United States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir. 1996) (citing, inter alia, United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989)).

Rather than putting forth a theory of how the documents allegedly seized from Dr. Siddiqui meet one of the above tests, the government cites a string of cases for the proposition that courts in the Second Circuit are generally deferential to language in the indictment, and then they simply state without explanation, that paragraphs One through Four meet the above test.[10]

[10] The cases cited by the government involve charges centering on alleged conspiracies in which the defendants were involved. In these cases, background information concerning criminal misconduct of other members of the conspiracy and/or the defendant in furtherance of the conspiracy clearly met one or all of the tests set out in Hernandez. In contrast, Dr. Siddiqui is not charged with a conspiracy. The charges in Dr. Siddiqu's case are more analogous to the charges in United States v. Malachowski, 604 F. Supp. 2d 512 (N.D.N.Y 2009). In Malachowski, the defendant was charged with, inter alia, knowingly possessing 25 machine guns in violation of 18 U.S.C.S. § 922(o) and being an illegal alien in the United States in possession of 58 firearms in violation of 18 U.S.C.S. § 922(g)(5)(A). The Court found that inclusion of language in the indictment of the uncharged allegation that serial numbers of one of the weapons in question had been scratched off was surplusage. It was unnecessary to charges before the court and was clearly prejudicial to the defendant because of the danger that these allegations might "compel some jurors to infer that defendant sought to avoid detection because he intended to use the pistol for a separate criminal purpose." Likewise the background information in Dr. Siddiqui's case does not fill in necessary information with respect to the charges, but rather raises the specter that the jury might convict her out of fear that she intended to use the documents in a separate criminal purpose, namely attacks on New York.

As Judge Land recently observed, however, "Unlike in Alice in Wonderland, simply saying something is so does not make it so." Rhodes v. Macdonald, 2009 U.S. Dist. LEXIS 84743 (M.D. Ga. Sept. 16, 2009).

Alternatively, the government argues that it intends to move in limine for the admissibility of certain information referenced in paragraphs One through Four of the indictment. The government contends that the Court is better served by considering the surplusage motion in conjunction with their brief for admission of the underlying evidence of the allegations contained in paragraphs One through Four.

The defense believes that it raised a timely challenge pursuant to Rule 7(d) to the language used in the indictment in the omnibus motion, and it would be a proper exercise of discretion for the Court to decide the issue without further briefing. That being said, the defense does not object to the government's proposal that the Court consider the Rule 7(d) motion in conjunction with the government's motion in limine concerning the underlying documents as a matter of judicial economy. The defense's principal concern in bringing the motion was that the issues of admissibility would be determined in advance of trial and that the defendant not be prejudiced by the government's reference to information in opening statements that would ultimately not be admissible.

## IV. Dr. Siddiqui's Statements To Afghan Authorities Should Be Suppressed

11

## V. The Government Concedes That Dr. Siddiqui's Statements To American Authorities Were Improperly Obtained

12

13

## VI. Status Of Motion Regarding Counsel Visits At The Metropolitan Detention Center

Pursuant to the modifications for attorney's visits made by MDC, Brooklyn, defense counsel Dawn Cardi conducted a successful four-hour visit with defendant Dr. Siddiqui on Saturday, September 19, 2009. Attorney Elaine Sharp is likewise scheduled to make a visit Monday, September 21. While counsel remain concerned that the isolation of defendant Dr. Siddiqui attendant to the accommodations poses a threat for further mental deterioration of the defendant, counsel acknowledge that the accommodations have, at least for the moment, mooted the issue. Counsel reserves the right to renew the motion should the defendant's mental condition deteriorate due to isolation, making the accommodations no longer workable. Counsel respectfully thanks the Court for its attention and assistance in this matter.

## Conclusion

For all the reasons cited above and in defense counsel's initial brief, we respectfully request that the relief sought in the Notice of Defendant Aafia Siddiqui's Omnibus Pretrial Motions (with the qualifications noted above) and any other relief deemed just and appropriate by this Court be in all respects granted.

Dated: New York, New York
September 21, 2009

DAWN M. CARDI & ASSOCIATES

By: /s/
Dawn M. Cardi
Chad L. Edgar

Two Park Avenue, 19th Floor
New York, New York 10016
212.481.7770 (tel.)
212.684.3008 (fax)
*Attorneys for Aaffia Siddiqui*

_________/s/___________
Linda Moreno, Esq.
P.O. Box 10987
Tampa, FL 33697
813.247.4500 (tel.)
813.386.6211 (fax)
*Attorney for Aafia Siddiqui*

_________/s/___________
Charles Swift, Esq.
SWIFT & MCDONALD, P.S.
2003 Western Avenue, #330
Seatlle, WA 98121
206.441.3377 (tel.)
206.448.2252 (fax)
*Attorney for Aafia Siddiqui*

_________/s/___________
Elaine Whitfield Sharp, Esq.
196 Atlantic Avenue
Marblehead, MA 01945
781.639.1862 (tel.)
781.639.1771 (fax)
*Attorney for Aafia Siddiqui*