UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA,

                                                                        08 Cr. 826 (RMB)

    - against -

AAFIA SIDDIQUI,

                                   Defendant.

-----------------------------------------------------------X

## REPLY MEMORANDUM OF LAW OF DEFENDANT AAFIA SIDDIQUI IN FURTHER SUPPORT OF HER MOTION TO CONDUCT A DEPOSITION OF ABDUL QADEER

DAWN M. CARDI & ASSOCIATES
  Dawn M. Cardi, Esq.
  Chad L. Edgar, Esq.
Two Park Avenue, 19th Floor
New York, New York 10025
Tel.: 212.481.7770
Fax: 212.684.3008
*Attorneys for Aafia Siddiqui*

Linda Moreno, Esq.
P.O. Box 10987
Tampa, FL 33697
Tel. (813) 247-4500
Fax (813) 386-6211
*Attorney for Aafia Siddiqui*

SWIFT & MCDONALD, P.S.
  Charles Swift
2003 Western Avenue, #330
Seattle, WA 98121
Tel. (206) 441-3377
Fax (206) 448-2252
*Attorney for Aafia Siddiqui*

Elaine Whitfield Sharp, Esq.
196 Atlantic Avenue
Marblehead, MA 01945
Tel. (781) 639-1862
Fax (781) 639-1771
*Attorney for Aafia Siddiqui*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

          - against -

AAFIA SIDDIQUI,

          Defendant.

------------------------------------------------------------X

08 Cr. 826 (RMB)

**REPLY MEMORANDUM OF LAW**

## REPLY MEMORANDUM OF LAW OF DEFENDANT AAFIA SIDDIQUI IN FURTHER SUPPORT OF HER MOTION TO CONDUCT A DEPOSITION OF ABDUL QADEER

This Memorandum Of Law is respectfully submitted on behalf of Aafia Siddiqui ("Dr. Siddiqui" or "defendant") in further support of her motion to take the deposition of Abdul Qadeer in Ghazni, Afghanistan pursuant to Rule 15 of the Federal Rules of Criminal Procedure as set forth below.

### Argument

In the Government's Memorandum of Law In Opposition to Defendant's Motion for a Rule 15 Deposition of Abdul Qadeer dated September 18, 2009 ("Government Opposition" or "Gov't Opp."), the government opposes the defendant's motion to depose Mr. Abdul Qadeer on three grounds: (1) that defendant through counsel has made an insufficient showing that Mr. Qadeer's testimony is material; (2) that ongoing hostilities in Afghanistan warrant denial of the requested deposition; and (3) that the government is exploring the feasibility of transporting Mr. Qadeer to the United States for his deposition should he agree to do so.

1

## I. The Materiality of Mr. Qadeer's Testimony Has Been More Than Sufficiently Established By Defense Counsel

The government first argues without citing authority that defense counsel's declaration upon which the motion relies is insufficient in part because it does not annex a translation and transcription of an interview of Mr. Abdul Qadeer conducted by British journalist, Yvonne Ridley in October of 2008. See Gov't Opp. at 5. The government's argument confuses a defendant's discovery obligations with the evidentiary requirements attendant to Rule 15. Under Rule 15 a declaration establishing the materiality of the witnesses is sufficient. See United States v. Vilar, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008) (rejecting the argument that the proponent of a deposition must produce "affidavits from the witnesses as to their proposed testimony, or at a minimum, produce all of the notes and memoranda of the witness interviews so that the Court and the opponent can properly evaluate materiality.")

Rather the defense, like the government, is required to provide any previously recorded statements of a witness under the Jenks Act, once the witnesses has testified. Despite the fact that by rule the obligation would only arise upon completion of Mr. Qadeer's direct testimony during the deposition, the defense will provide the government with a copy of the video of Ms. Ridley's interview of Mr. Qadeer as soon as the instant motion is granted, which should give the government sufficient time to use it in preparation for his deposition.

Alternatively the government argues that the declaration submitted in support of the motion to depose Mr. Qadeer is insufficient to establish materiality. See Gov't Opp. at 5. The government's argument is essentially that because Mr. Qadeer states in his interview that he witnessed representatives from the United States military team go

2

behind the curtain dividing the room from the area where Dr. Siddiqui was housed and thereafter heard shots, that his testimony is not clearly exculpable. According to the government, this testimony does not establish that Dr. Siddiqui did not fire on personnel associated with the United States military forces as alleged.

The government's argument ignores, however, the fact that Mr. Qadeer's testimony clearly rebuts the facts alleged by the government with regards to how the shooting took place. According to the government's account, Dr. Siddiqui came out from behind the curtain, picked up a weapon that one of the members of the United States Army had placed against a wall, and then aimed the gun at another member of the United States Army. According to Mr. Qadeer, Dr. Siddiqui did not "ambush" United States military personnel that day by suddenly appearing from behind the curtain; rather, members of the United States military instigated contact by stepping behind the curtain to speak with her. The contradiction in these two accounts underscores the credibility problems that accompany the government's allegations that Dr. Siddiqui, a woman clearly in physical distress at the time she was detained by the Afghan authorities and weighing less than 90 pounds, could grab possession of a weapon safeguarded by a group of highly trained combat soldiers. In light of the serious credibility issues that trouble the government's account of what happened on July 18, 2008 when Dr. Siddiqui came in contact with United States military personnel, Mr. Qadeer's testimony is clearly material to Dr. Siddiqui's defense.

Finally, the government argues that based on government counsel's interview of Mr. Qadeer, his prospective testimony may be explained and/ or rebutted by statements made by Mr. Qadeer to the government, including details about his vantage point in the

room.[1]  See Gov't Opp. at 4-5.  This argument is equally misdirected.  In essence, the government asserts that, based on the government's interview of Mr. Qadeer, it will be able to effectively cross examine Mr. Qadeer.  Promises of effective cross-examination, however, should not preclude the preservation of Mr. Qadeer's testimony through deposition.

## II. The Existence of Ongoing Hostilities in Afghanistan Does Not Warrant Denial of the Requested Deposition

The defense does not disagree that hostilities remain ongoing in Afghanistan. During these hostilities the government managed to return to Ghazni not once but twice,

---

[1] Surprisingly, after objecting to the sufficiency of defense counsel's declaration regarding Mr. Qadeer's testimony, the government neglected to provide a supporting declaration regarding government counsel's interview in support of the government's factual assertions.  More concerning is the fact that the government has been aware of the substance of Mr. Qadeer's statements regarding the events of July 18th.  The defense trusts that the government did not engage in an evaluative analysis of Mr. Qadeer's potential testimony that concluded with a determination that his existence could be withheld from the defendant based on a rather weak explanation mentioned above as to the immateriality of the contradictions between his account and the government's account of Dr. Siddiqui's shooting.  Clearly, the government realizes that its Brady obligations run more deeply than explanations that strain credulity.  Rather, the defense chooses to believe that the government understood that Mr. Qadeer's interviews were within the government's Brady obligations and merely waited to disclose them just in time (but no sooner) for defendant to make use of them before trial.  See Grant v. Alldredge, 498 F.2d 376 382 & n.7 (2d Cir. 1974) (finding a violation of Brady where the government failed to make pretrial disclosure of exculpatory information in time for defense to have a reasonable opportunity to investigate the information or otherwise make use of it).  In support of this conclusion, the defense notes that the government recently provided laboratory analysis of what had previously been identified as plaster from a wall where the July 18th shooting occurred and which contained "bullet holes" from Dr. Siddiqui's alleged firing of the M-4.  According to these reports, the plaster contained neither bullets, nor bullet fragments nor gun powder residue.  The collection and subsequent testing was done in conjunction with the government's interview of Mr. Qadeer in October of 2008.  While the defense believes a serious issue of timeliness might well have existed had trial not been continued, the defense agrees the issue is moot.  Given the Court's instructions to counsel regarding the current trial date, defense trusts there will be no more last-minute surprises necessitating motions for continuances.

4

in August and October 2008, to collect evidence and interview prospective witnesses, including Mr. Qadeer.[2] Despite the government's repeated visits to Ghazni and interviews of Mr. Qadeer, when it comes to deposing Mr. Qadeer, however, the government reverses its position and argues that it is simply too dangerous. Notably the government offers no evidence that the conditions have materially changed in Ghazni since the time of its first two visits or that military authorities cannot provide for the safe conduct of a deposition. Quite to the contrary, previously, the government in informal discussions had offered to assist members of the defense team in visiting Ghazni prior to trial. Presumably the government's offer of assistance indicates that the government has reason to believe that the defense, with proper security, can safely visit Ghazni.[3]

In the event that the court were to find that conditions in Afghanistan in general and in Ghazni in particular had deteriorated to the point that a deposition is not feasible, such a finding does not simply amount to a denial of Dr. Siddiqui's request. Rather, such a finding mandates that the Court find that the charges against Dr. Siddiqui are not within its jurisdiction. Dr. Siddiqui's challenge to the extraterritorial application of the charges against her is currently pending before the Court. The challenge is limited to arguments

---

[2] The government's visits on at least one occasion included government counsel.

[3] The defense does agree with the government's concern where court reporters are concerned. A court reporter, however, is unnecessary. Mr. Qadeer does not speak English. The most practical method for conducting his deposition is by video. A video deposition could easily be conducted without a court reporter. On-site translations of counsel's questions and Mr. Qadeer's answers would still be necessary. This, however, could be accomplished, in the same manner as the earlier interviews, using a military or law enforcement translator currently in Afghanistan. Using the video, a court certified translator would then prepare a transcript for use in trial absent sustained objections ruled on by the court. Using this procedure, the only persons attending the deposition would be a government attorney, perhaps the same person who previously voluntarily visited Ghazni, and defense counsel who requested the deposition.

concerning the intent of Congress with respect to Section 1114 and the government's adherence to statutory constraints with respect Section 2332.[4] Whether a statute is extraterritorial in scope actually has a two-part test. A statute is extraterritorial "as long as Congress has indicated its intent to reach such conduct ...... unless this would violate the due process clause of the Fifth Amendment." United States v. Yousef, 327 F.3d 56, 58 (2d Cir N.Y. 2003). Due process requires that Dr. Siddiqui be afforded the ability to call witnesses on her behalf and Rule 15 provides her the opportunity to preserve those witnesses' testimony when they are not within the subpoena power of the court. If the conditions in Afghanistan prevent Dr. Siddiqui from being able to exercise those rights, then she is deprived of due process and the charges must be found, under the circumstances, not to be extraterritorial.

The government chose to bring charges against Dr. Siddiqui for an alleged incident which occurred in this war zone. The government cannot then claim that the fact that the eye-witnesses and evidence and crime scene are located *in a war zone* is an excuse as to why a deposition should not take place. We respectfully submit that due process requires the government either to consent to the depositions or to dismiss the charges against Dr. Siddiqui.

### III. Deposition of Mr. Qadeer in the United States

The government indicated in its reply that counsel was attempting to ascertain whether Mr. Qadeer could be brought to the United States for a deposition. Rule 15 does not specify where a deposition should be held only the circumstances when it should be held. The defense, therefore, is not opposed to the government procuring Mr. Qadeer and

---

[4] The intent of Congress to apply 2332 extraterritorially is clearly established by the plain language of 2332 subject to conditions precedent.

6

bringing him to New York to be deposed. What the defense seeks simply is that a deposition of Mr. Qadeer in advance of trial be ordered by the Court and that the parties coordinate the time and place of the deposition.

## CONCLUSION

For the reasons stated above and in the motion papers submitted to the Court on September 14, 2009, defense counsel on behalf of Dr. Siddiqui seek the deposition of Abdul Qadeer pursuant to Rule 15 of the Federal Rules of Criminal Procedure at a time and place mutually convenient to the parties.

Dated: New York, New York
       October 5, 2009

By: _____/s/_____
Dawn M. Cardi
Chad L. Edgar
DAWN M. CARDI & ASSOCIATES
Two Park Avenue, 19th Floor
New York, New York 10016
212.481.7770 (tel.)
212.684.3008 (fax)
*Attorneys for Aafia Siddiqui*


_____/s/_____
Linda Moreno, Esq.
P.O. Box 10987
Tampa, FL 33697
813.247.4500 (tel.)
813.386.6211 (fax)
*Attorney for Aafia Siddiqui*


_____/s/_____
Charles D. Swift
2003 – Western Ave., Suite 330
Seattle, Washington 98121
206.441-3377 (tel.)
212.448-2252 (fax)
*Attorney for Aafia Siddiqui*

                              /s/
Elaine Whitfield Sharp
196 Atlantic Avenue
Marblehead, MA 01945
781.639.1862 (tel.)
781.639.1771 (fax)
*Attorney for Aafia Siddiqui*