# REDACTED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

       - v. -                    :        08 Cr. 826 (RMB)

AAFIA SIDDIQUI,                    :

          Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S
## MOTION IN LIMINE

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

Christopher L. LaVigne
David Rody
Jenna Dabbs
Assistant United States Attorneys

    - Of Counsel -

# TABLE OF CONTENTS

Page

I.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  A.    The Materials Recovered from the Defendant
        Are Admissible in the Government's Case-in-Chief. . . . . . . . . . . . . . . .   5

     1.   The Intent Evidence Recovered from the Defendant. . . . . . . . . . . .  6

     2.   The Intent Evidence is Direct Evidence of the Crimes
          Charged. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

     3.   The Intent Evidence is Admissible as Background to the
          Crimes Charged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

     4.   In the Alternative, the Evidence is Admissible
          Pursuant to Federal Rule of Evidence 404(b). . . . . . . . . . . . . . . . . 12

     5.   The Intent Evidence is Not Precluded by Rule 403 . . . . . . . . . . . . 18

  B.    Cross Examination Relating to Certain Topics Should
        Be Limited. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

III.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

       - v. -        :        08 Cr. 826 (RMB)

AAFIA SIDDIQUI,        :

          Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S
### MOTION IN LIMINE

       The Government respectfully submits this motion *in limine* to permit the jury to consider direct evidence of the charged crime, and to preclude the defendant from seeking to offer irrelevant evidence.

       In particular, the Government seeks a ruling in advance of trial regarding the admissibility of certain evidence seized from the defendant the night before she attempted to kill United States personnel.  These items are direct evidence of the crimes with which the defendant is charged and are necessary background evidence to the charges in the indictment and, in the alternative, are admissible pursuant to Federal Rule of Evidence 404(b).

       For the reasons detailed below, the Court should grant the Government's motion

1

*in limine.*

## I.   Background

On September 2, 2008, a grand jury sitting in this District returned an indictment (the "Indictment") that charges the defendant on seven counts, based on events that occurred at an Afghan National Police Compound (the "ANP Compound") in Ghazni, Afghanistan on July 17 and 18, 2008: (1) attempting to kill United States nationals in violation of Title 18, United States Code, Section 2332(b) (Count One); (2) attempting to kill United States officers and employees in violation of Title 18, United States Code, Section 1114 (Count Two); (3) armed assault of United States officers and employees in violation of Title 18, United States Code, Section 111(b) (Count Three); (4) discharging a firearm during a crime of violence in violation of Title 18, United States Code, Section 924(c) (Count Four); and (5) assaulting United States officers and employees in violation of Title 18, United States Code, Section 111(a) (Counts Five through Seven).

As set forth in the complaint (the "Complaint") and the Indictment, on July 17, 2008, the Afghan National Police (the "ANP") arrested the defendant in the vicinity of the bazaar district of Ghazni City.  At the time of her arrest, the ANP seized a number of items from the defendant, including: (1) various personal effects, such as clothing, makeup, hair products, and feminine products; (2) approximately two pounds of sodium cyanide; (3) a number of handwritten notes (in English and Urdu) that referenced "enemies" – including the United States – and that discussed the construction of chemical, biological, and other types of weapons; (4) a number of printed materials from various publications that discussed the construction of chemical and biological weapons, using various homemade materials; and (5) a computer thumb

drive containing various electronic documents, certain of which referenced ways to attack "enemies" and various chemical compounds that can be used to create weapons. (Compl. ¶¶ 4(c), (d); Indictment ¶¶ 2-4.)[1] All of these items are referenced, collectively, as the "Defendant's Materials."

The evidence at trial will show that the ANP provided these items to United States military authorities on July 17, 2008. The military reviewed the Defendant's Materials and determined – based in part on the documents' references to the United States, and to possible terrorist attacks – that the woman detained by the ANP (the defendant) was a person of interest, who was potentially planning attacks against the United States. Accordingly, the FBI was contacted to assist in analyzing the Defendant's Materials and in identifying and questioning the defendant.

The evidence at trial will show that on the following day, July 18, 2008, a team of FBI agents and United States military personnel (the "Interview Team") traveled to the ANP Compound to interview the defendant. The Interview Team included: (1) a Chief Warrant Officer of the United States Army (the "Warrant Officer"); (2) a Captain of the United States Army (the "Captain"); (3) a Medic with the United States Army; (4) two military interpreters ("Interpreter 1" and "Interpreter 2"); and (5) two FBI Special Agents.

After arriving at the ANP Compound, the trial evidence will show, the Interview

---

[1]    The Government is submitting under seal, attached to this brief as exhibits: (1) copies of photographs of certain of the items recovered from the defendant (Exhibit A); (2) copies of certain handwritten documents recovered from the defendant (Exhibit B); (3) copies of draft translations of the handwritten Urdu documents (Exhibit C); and (4) copies of certain pre-printed materials recovered from the defendant (Exhibit D). Throughout this brief, "Ex. [LETTER]" refers to these attachments.

Team was directed to a second floor room (the "Room"). Unknown to the Interview Team, the defendant was left unsecured in the Room, behind a curtain. (Compl. ¶5(b); Indictment ¶ 5.) After entering the Room and briefly looking behind the curtain, the Warrant Officer placed down, next to the curtain, a United States Army M-4 rifle. (Compl. ¶5(c).)

Before the Interview Team realized that the defendant was in the Room, the defendant grabbed the Warrant Officer's M-4 rifle and pointed it at the Captain. (Compl. ¶ 5(d).) The defendant then attempted to kill members of the Interview Team by attempting to fire, and firing, the M-4 rifle at the Interview Team. In response, Interpreter 1 lunged at the defendant to wrestle the gun from her. (Compl. ¶ 5(f); Indictment ¶¶ 6-14.) During the course of this struggle, the Warrant Officer shot the defendant with his nine millimeter pistol. (Compl. ¶ 5(f).) After being shot, the defendant struggled with members of the Interview Team who were attempting to subdue her. During these struggles, the defendant repeatedly yelled, among other things, that she wanted to kill Americans. (Compl. ¶¶ 5(f), (g); Indictment ¶¶ 13-18.)

Soon after the above-described incident, the Interview Team removed the defendant from the ANP Compound and brought her to a military base (the "Base") in Ghazni, Afghanistan for medical treatment. At the Base, the defendant's wounds were treated; subsequently, the defendant was brought to other military facilities where she received treatment.

Then, on August 4, 2008, the defendant was transferred to this District.

## II.    **Discussion**

As summarized below, in advance of trial, the Government respectfully seeks rulings relating to the admissibility of certain trial evidence. First, the Government seeks a ruling that certain evidence recovered from the defendant on July 17, 2008 is admissible.

**A.**     <u>The Materials Recovered from the Defendant</u>
       <u>Are Admissible in the Government's Case-in-Chief</u>

When the defendant was arrested by the ANP on July 17, 2008, she was in possession of the Defendant's Materials. *See supra.* At trial, the Government intends to offer a sub-set of the Defendant's Materials. This sub-set includes: (1) a number of chemicals (including almost two pounds of sodium cyanide); and (2) numerous hard copy documents (certain of which were in the defendant's handwriting and certain of which consist of excerpts from published materials).[2]

The Government intends to offer in its case-in-chief photographs of all of this evidence, the hard copy documents that were recovered from the defendant, and the chemicals that contained sodium cyanide (the "Intent Evidence"). The Government submits that the Intent Evidence is: (1) direct evidence of the crimes charged; (2) admissible as background information; and (3) alternatively, is admissible pursuant to Federal Rule of Evidence 404(b).

---

[2]     The Government does not presently intend to introduce any of the 500-plus electronic documents that were found on the computer thumb drive that was recovered from the defendant. Many of these electronic documents express sentiments that are similar to the sentiments that are expressed in the hard copy documents recovered from the defendant, and that are discussed below. For example, the electronic documents, like the hard copy documents, refer to the United States as an "enemy," the construction of chemical and biological weapons, and the defendant's background (*see, e.g.,* Comp. Hearing GX L.) To streamline this trial, and avoid prolonging it with arguably cumulative evidence, the Government has, for now, decided to forego introducing the electronic documents. Should the Government's position change, it will promptly advise the Defense Team and the Court.

1.      <u>The Intent Evidence Recovered from the Defendant</u>

The Intent Evidence recovered from the defendant on July 17, 2008 includes over 100 pages of hard copy documents.  The documents include the handwritten materials prepared by the defendant in English and Urdu, and various excerpts of pre-printed materials.  After the shooting in this case, the FBI conducted fingerprint analysis of the hard copy documents recovered from the defendant.  This analysis revealed that the defendant's fingerprints were recovered from three of them.  (*See* Ex. B at 1353, 1380; Ex C at 2.)  Taken as a whole, these materials demonstrate that on July 18, 2008, the defendant intended to harm United States personnel.  Accordingly, the Intent Evidence forms a crucial part of the events underlying the crimes with which the defendant is charged.

The hard copy, handwritten documents that form part of the Intent Evidence contain writings in English (all unmistakably in the defendant's handwriting), which refer, among other things, to planned attacks, United States landmarks, and "enemies."  For example:

- "a 'mass casualty attack' . . . NY City monuments: Empire State Bld., Statue of Liberty, Brooklyn Bridge, etc." (*See* Ex. B at 1380.)

- "<u>Do the unthinkable:</u> Attack enemies on gliders. . . .  Attack using laser beams." (Ex. B at 1346.)

- "Need booby traps + 'dummy' shelters (metal deposits) to fool enemy's radar." (Ex. B at 1375.)

- "<u>To kill or 'mess up' drones. etc.</u>  How about thin pointed 'charged towers' that discharge their electricity upon the drone as it approaches near or over them." (Ex. B at 1380.)

- "Bomb (mine-sniffer sub): remote controlled sniffer destroys underwater mines (US navy)."  (Ex. B at 1380.)

- "<u>Plum Island</u>: 2 miles off the tip of Long Island, NY.  840 acre island.  Plum

6

island animal disease center maybe site for new biodefense lab." (Ex. B at 1380.)

• "<u>Dirty Bomb:</u> Need few oz. radioactive material (e.g. cobalt 60 from food irradiation facility) . . . wrap cobalt 60 around a [u/i] bomb, detonate it & shower a city w deadly fall out. . . . To detect dirty bombs, gamma and other radiation sensors @ airports [or] seaports [or] police depts (but still not all covered in America). . . . <u>Practical</u> dirty bomb would work by causing FEAR, not much deaths." (Ex. B at 1380.)

Certain of the documents that form part of the Intent Evidence were written in Urdu, the defendant's native language, and consist of a litany of "how to's" relating to the construction of chemical, biological, and other weapons, including a match gun, gunpowder, mortar rockets, fertilizer explosives, dynamite, urea nitrate bombs, and various other explosives. (*See, e.g.*, Ex. C at 1618-21.) These documents reflect the defendant's understanding of a wide array of weaponry. The documents contain, for example (as translated), various references to gunpowder as a key constituent for various explosives. (Ex.C at 1306, 1622-25.) Portions of the defendant's notes also make reference to how to construct gunpowder, the process for which is described as "an easy and a relatively safe method." (Ex. C at 1308.) Certain notes state "as soon as the gunpowder is completely dried, immediately remove it from heat, and either put it inside a bombs, etc. to be used, or if it's to be stored, it should be stored in small quantities." (Ex. C at 1310.) Other documents contain references to guns. In discussing "red or white explosives," for example, the documents note that "[t]his can be prepared by east 4 and safe methods and is used to trigger bullets in smaller weapons (where the inside bor is ½ inch or less). The smaller weapons in which this can be used are 'match guns' of 7.62 carbine, but it is not used in pistols." (Ex. C at 1324.)

Interspersed throughout the Intent Evidence are certain statements written in Urdu

7

in the defendant's hand that shed light on the defendant's state of mind on the day of the charged shooting, including (as translated to English): (1) "It is better to die while fighting infidels than to die or become handicapped by one's own negligence and carelessness when making weapons . . . If, despite exercising cautions, God has willed that the person gets wounded or becomes a martyr from his own weapons, then let it be!  God is great!"; (2) "It is better to build shelters for Mujahedeen to hide in the mountains, in jungles, deserts, in remote and suburban areas, so that if they become targets of the enemy, most of the bombs will fall on empty grounds."; (3) "[i]n your area, about 30 miles from Kabul, there is a long strip of land where high quality of copper deposits is available in abundance, which is being stolen by the infidel occupiers, and being taken to their countries!"; and (4) "[b]etween the shelter and all the passage ways, having an air *tight* door is beneficial for reason that if enemy releases poisonous gas from one passage way, we can escape from another passage way.  That's why it is advised that the tunnel of the third passage way must end at a far off, hidden place."  (Ex. C at 1305, 1334, 1335, 1336.)

　　　　Finally, additional hard copy documents recovered from the defendant consist of tens of pages of pre-printed materials that discuss, *inter alia*, how to create homemade bombs, using C-4 and other chemicals (Ex. D at 23); how to construct gunpowder (Ex. D at 25); and how to destroy United States satellites, and information with respect to deadly germs (*see, e.g.*, Ex. A at 511-18; Ex. D at 1, 3, 8.)

　　　　In addition to the above-described documents, the Intent Evidence recovered from the defendant includes various chemicals that were recovered in containers.  One of these chemicals subsequently tested positive for sodium cyanide; a chemical compound that is lethal

8

when ingested, even in small amounts.[3]

2.      **The Intent Evidence Is Direct Evidence of the Crimes Charged**

The Intent Evidence is direct evidence of the defendant's intent to harm the

United States military on July 18, 2008.

To prove Counts 1 and 2 of the Indictment, the Government must establish

beyond a reasonable doubt that the defendant attempted to commit murder; specifically, that she

intended to kill United States nationals and officers and employees of the United States. The

sentiments expressed in the hard copy documents – which were recovered from the defendant the

night before the incident – are highly probative of this element of the crime. As summarized

above, the hard copy documents contain repeated references to various types of attacks and

weapons, reference various sensitive locations in the United States, and articulate various anti-

United States sentiments. The evidence will show that when the defendant learned that United

States forces arrived to question and identify her on July 18, the defendant acted consistently

with the sentiments she had articulated in the documents she had written – she saw an

opportunity to kill Americans, and she attempted to do so. Immediately after the shooting, the

---

[3]      In the event any documentary materials recovered from the defendant are
admitted, the Government requests that they be introduced as evidence at trial but that they be
received under seal, such that they would not be accessible to members of the public who may
want to obtain copies of them. The reason for this request is that the materials contain detailed
instructions and commentary about the construction of chemical and biological weapons. The
materials would be treated as ordinary trial exhibits in all other respects – they could be discussed
freely in open court, for example, and provided to the defendant and to the jury – but would not
be treated as "public exhibits" for purposes of the Court's March 2009 Protective Order. Should
the Court grant this request, the Government will submit a proposed order in advance of trial that
identifies those materials that the Government intends to offer, and provides that they will be
received under seal.

defendant continued to act on these sentiments, by repeatedly stating her intent and desire to kill Americans.  The defendant's possession of sodium cyanide -- which is lethal even in small doses -- is further evidence of this intent.

In addition, for five of the seven counts with which the defendant is charged, the Government must prove beyond a reasonable doubt that the victims of the offense (here United States military officers and FBI agents) were acting in the course of their official duties.  *See* 18 U.S.C. § 1114; 18 U.S.C. § 111.  Thus, the factual predicate for why the Interview Team traveled to the ANP Compound on July 18, 2008 -- the defendant's arrest and possession of the Intent Evidence -- is direct evidence of the crimes with which she is charged and should be admitted.[4]

### 3.     The Intent Evidence Is Admissible As Background to the Crimes Charged

The Intent Evidence is also admissible "to provide background for the events alleged in the indictment."  *United States* v. *Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (citation omitted); *see id.* (holding that "[b]ackground evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed") (quoting *United States* v. *Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988)); *cf. United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense");

---

[4]     As noted previously, the Government presently does not intend to offer the electronic documents found on the thumb drive that was recovered from the defendant.  The Government does anticipate eliciting limited testimony regarding the military's review of this thumb drive the night before the shooting, as it relates to the military's decision to interview and identify the defendant.

10

*United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (prior act evidence admissible to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed).  As the Eighth Circuit stated: "A jury is entitled to know the circumstances and background of a criminal charge.  It cannot be expected to make its decision in a void-without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *United States* v. *Moore*, 735 F.2d 289, 292 (8th Cir. 1984).

The trial evidence will show that United States military officers – including members of the Interview Team – learned of the defendant's arrest during the late evening of July 17, 2008 and early morning of July 18, 2008.  During this period, various military officers reviewed the hard copy documents and chemicals that were recovered from the defendant at the time of her arrest, and conducted a cursory review of the thumb drive that was recovered from her.  Based on this review, the military concluded that the woman detained by the ANP certainly was a person of interest who needed to be interviewed and identified.  The military then contacted the FBI and made arrangements for two FBI agents to travel to Ghazni to assist in interviewing and identifying the defendant.

The materials recovered from the defendant form an integral part of the background to the charges in the Indictment – they directly bear on why the defendant was detained, and why the United States military personnel decided to travel to the ANP Compound to interview her.  Thus, the admission of the Intent Evidence is necessary "to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense," *Inserra*, 34 F.3d at 89, and certainly is "inextricably

11

intertwined," *United States* v. *Towne*, 870 F.2d 880, 886 (2d Cir. 1989), with the charges against the defendant. *See Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (affirming admission of evidence related to defendant's burglary attempt in felon-in-possession case "to provide crucial background evidence that gave coherence to the basic sequence of events" that underlie the criminal charges).

Indeed, in the event these materials are not admitted, the jury will be left baselessly to speculate as to why the Interview Team went to an ANP Compound, perhaps based on defense questioning. Precluding the Government from introducing these materials will prevent the jury from hearing crucial evidence and from placing the Government's proof in context. *See Old Chief* v. *United States*, 519 U.S. 172, 188-89 (1997) (holding that prosecution is entitled to present a complete narrative of the crime that "satisf[ies] jurors' expectations about what proper proof should be."). And, given that the Intent Evidence recovered from the defendant the night before the shooting, and were reviewed by witnesses to the shooting, the admission of this evidence will not unduly prolong or delay the trial.

4.      **In the Alternative, the Evidence is Admissible Pursuant to Federal Rule of Evidence 404(b)**

If the Intent Evidence is not admitted as direct evidence of the crimes with which the defendant is charged or to provide background and context to those crimes, it should nonetheless be admitted under Rule 404(b). Evidence of prior acts of the defendant may be admissible under FRE 404(b) as evidence of the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." For evidence to be admitted under Rule 404(b):

the district court must determine if the evidence is offered for a proper purpose, one other than to prove the defendant's bad character or criminal propensity. If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an issue in the case, and, if relevant, whether its probative value is substantially outweighed by the danger of unfair prejudice. Finally, upon request, the district court must give an appropriate limiting instruction to the jury.

*United States* v. *Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992).

The Second Circuit has "long been committed to the 'inclusionary' approach to 'other crimes' evidence; that is, that evidence of similar criminal acts is admissible [under Rule 404(b)] if it 'is substantially relevant for some other purpose than to show a probability that [the defendant] committed the crime on trial because he is a man of criminal character.' McCormick, Evidence § 190, at 447 (2d ed. 1972)." *United States* v. *Benedetto*, 571 F.2d 1246, 1248 (2d Cir. 1978). In other words, under the Second Circuit's "inclusionary approach" to the admission of other act evidence, evidence of prior crimes, wrongs or acts is admissible for any purpose other than to show a defendant's criminal propensity. *See United States* v. *Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996); *United States* v. *Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992), *abrogated on other grounds*, 526 U.S. 559 (1999); *United States* v. *Pipola*, 83 F.3d 556, 565 (2d Cir. 1996) (holding that the Second Circuit "allows evidence of other wrongs to be admitted so long as it is relevant and it is not offered to prove criminal propensity."); *United States* v. *Paulino*, 445 F.3d 211, 221 (2d Cir. 2006); *United States* v. *Pitre*, 960 F.2d 1112, 1118-19 (2d Cir. 1992). In short, as long as the other crimes evidence is "relevant to some disputed issue in the trial,' and satisfies the probative balancing test of Fed. R. Evid. 403," it is admissible. *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (citation omitted); *see also United States v. Pitre*, 960 F.2d at

13

1118.

     The Intent Evidence easily meets this test. It is plainly probative of the defendant's motive and intent on July 18, 2008; and it establishes the defendant's knowledge of weaponry, including guns, which makes it more likely than not that she grabbed the Warrant Officer's M-4 rifle.

Motive and Intent

     These items are relevant to the defendant's motive and intent. Proof of state of mind, such as intent and/or knowledge, is a "proper purpose" for admission of other crimes evidence under Rule 404(b). *United States* v. *Teague*, 93 F.3d 81, 84 (2d Cir. 1996) (quoting *Huddleston* v. *United States*, 485 U.S. at 691). The Second Circuit has made clear that where it is apparent that knowledge or intent will be in dispute, "evidence of prior or similar acts may be introduced during the government's case-in-chief, 'rather than waiting until the conclusion of the defendant's case.'" *United States* v. *Pitre*, 960 F.2d at 1120 (quoting *United States* v. *Caputo*, 808 F.2d 963, 968 (2d Cir. 1987)).

     The Second Circuit has held that a defendant's knowledge and intent are in issue unless the defendant has expressed with sufficient clarity a decision not to dispute that element of the offense. *See, e.g., United States* v. *Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (holding that when the defendant "disavows awareness that a crime was being perpetrated" and the government bears the burden of proving knowledge "as an element of the crime, knowledge is properly put in issue"); *see also United States* v. *Inserra*, 34 F.3d at 90 ("[A]dmission of similar act evidence to prove intent or knowledge . . . is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."); *United States v. Aminy*, 15 F.3d

14

258, 260 (2d Cir. 1994) ("Where, for example, the defendant does not deny that he was present during a narcotics transaction but simply denies wrongdoing, evidence of other arguably similar narcotics involvement may, in appropriate circumstances, be admitted to show knowledge or intent."); *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.") (citing *United States v. Ramirez-Amaya*, 812 F.2d 813, 817 (2d Cir. 1987)); *United States v. Mills*, 895 F.2d 897, 907 (2d Cir. 1990) (noting that evidence of other crimes is properly admissible to "show that a defendant who claims that his conduct had an innocent explanation had the intent to commit the offense"); *United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987) ("[w]here intent to commit the crime charged is clearly at issue, evidence of prior similar acts may be introduced to prove that intent").

Courts routinely admit evidence that bears on a defendant's *motive* for committing a specific crime, which is "the impetus that supplies the reason for a person to commit a criminal act." Weinstein's Federal Evidence § 404.22[3], at 404-114.2 (2009). *See United States v. Lehder-Rivas*, 955 F.2d 1510, 1518 (11th Cir. 1992) (evidence of defendant's views on Hitler and comparisons of the conspiracy's organization to the Third Reich were highly probative to show leader's motives for continued participation in the conspiracy (including for the demise of the United States).) Courts have admitted evidence of a defendant's hostility towards an individual (or group of individuals) that bear on the motive for committing a specific crime. *See, e.g., United States v. Fazal-ur-Raheman-Fazal*, 355 F.3d 40, 51 (1st Cir. 2004) (evidence of the defendant's threats to wife were admissible to assist jury in understanding defendant's motive for

kidnapping children); *United States* v. *Russell*, 971 F.2d 1098, 1107 (4th Cir. 1992) ("Hostility is a paradigmatic motive for committing a crime, and Russell's discharge from the Marine Corps, as well as the surrounding circumstances, were obviously relevant to the Government's proof of this motive" in prosecution for the murder of defendant's Marine wife); *United States* v. *McKinney*, 954 F.2d 471, 480 (7th Cir. 1992) (holding that evidence of the defendant's early manifestations of hatred for the victim was admissible in murder prosecution).

To prove counts 1 and 2 of the Indictment, the Government needs to establish beyond a reasonable doubt that the defendant attempted to kill her intended victims, which include members of the United States military and federal agents. The Government expects to prove this element through several eyewitnesses to this incident, who will testify that the defendant obtained an M-4 rifle from one of the members of the Interview Team, pointed it at them, and fired, attempting to kill United States personnel.

The Intent Evidence – which was on the defendant's person less than 24 hours before the shooting at the ANP Compound – directly bears on this issue. As summarized above, these documents reflect the defendant's state of mind, and her willingness to use a wide variety of weapons. The anti-American sentiments contained in the documents that the defendant wrote are consistent with – and corroborate – her attempt to murder members of the Interview Team and the statements she made immediately before, during, and after the time of the shooting.

<u>Knowledge</u>

The Materials are evidence of the defendant's knowledge of weaponry, which is probative of whether the defendant possessed the M-4 rifle and was able to fire it on July 18, 2008. As summarized above, the materials recovered from the defendant relate to a wide array of

explosives and weapons.  Specifically, certain of the documents – particularly those written in Urdu – discuss how to construct homemade weapons.  The documents carefully delineate how to construct various bombs, using chemical compounds and easy to obtain household items, and the defendant herself possessed sodium cyanide at the time of her arrest.  The documents are replete with references to gunpowder, and one document in particular consists of a diagram of the creation of a "match" gun, a type of rifle.  (*See, e.g.,* Ex. C at 1618-21.)  Other documents reference the particular caliber and bors of guns.  (*See, e.g.,* Ex. C at 1324.)

Thus, these documents demonstrate not only that the defendant knew how to operate various weapons, but that she was well versed in their construction and functioning.  They show the defendant's comfort and familiarity with weaponry.  They demonstrate that the defendant was confident in her ability to handle a complicated weapon such as the M-4 rifle.  All of this evidence therefore is probative of whether she grabbed the Warrant Officer's M-4 rifle and attempted to fire it.[5]

---

[5]      Related to this point, the Intent Evidence also shows an "absence of mistake or accident."  *See United States v. Mills,* 895 F.2d 897, 907 (2d Cir. 1990) (holding that evidence of other crimes is properly admissible "to show that a defendant who claims that his conduct had an innocent explanation had the intent to commit the offense").  While being treated at Bagram Airbase, the defendant admitted on more than one occasion to FBI agents that she picked up the Warrant Officer's gun.  The defendant added that she only picked up the gun to look at it (Competency Hearing GX D at 197, 201), and that she picked up the gun to "scare the men in the room" so she could get away (GX D at 543.)  The defendant did not admit – save perhaps on one occasion where she conceded that "spewing bullets at soldiers is bad" (Comp. Hearing GX D at 420) – to firing the gun.  Accordingly, these documents also directly refute an "innocent explanation" defense.

17

5.    <u>The Intent Evidence Is Not Precluded by Rule 403</u>

The proffered evidence is highly relevant and probative of the crimes charged in the Indictment, *see supra*, and there is no basis to exclude it under Rule 403, which permits the exclusion of evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

To exclude evidence under Rule 403, the defendant must show that the proffered evidence "involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *United States* v. *Genzler*, 50 F.3d 1133, 1139 (2d Cir. 1995) (internal quotation marks and citation omitted); *see also Perry* v. *Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) (same).

First, the admission of any evidence deemed not directly related to the charged conduct – which we believe this is (as stated above) – has the potential to be prejudicial. But, the admission of such evidence here is not "unfairly" prejudicial so as to warrant its exclusion under Rule 403. It is well settled that Rule 403 does not warrant exclusion of prior bad acts that "involve conduct [no] more sensational or disturbing than the crimes with which [the defendant] was charged." *United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990), *cert. denied*, 499 U.S. 940 (1991); *see also Paulino*, 445 F.3d at 223 (declining to exclude 404(b) evidence where the evidence "'did not involve conduct more inflammatory than the charged crime.'") (quoting *United States* v. *Livoti*, 196 F.3d 322, 326 (2d Cir. 1999); *United States* v. *Baez*, 349 F.3d 90, 94 (2d Cir. 2003). However, the evidence is only inadmissible under Rule 403 if it is *unfairly* prejudicial when measured against the charges the defendant is facing and the other

18

evidence in the case. *See* Fed. R. Evid. 403.

The content of the materials recovered from the defendant are no more sensational or inflammatory than the crimes with which the defendant is charged. The defendant is charged with two separate counts of attempting to murder United States nationals and United States personnel. The evidence will show that the defendant grabbed an Army Officer's machine gun and attempted to kill the United States personnel who were preparing to interview her. Against this backdrop – in a case involving the attempted murder of United States nationals and military officers – it can hardly be said that the defendant's possession of the documents and sodium cyanide is unfairly prejudicial to her case.

Indeed, the Intent Evidence is no more prejudicial or disturbing than the testimony of several witnesses who will testify about what they saw the defendant do on July 18, 2008. Thus, the prejudicial effect of the proffered evidence is not unfair under Rule 403 because the nature of the evidence is generally the same as the nature of the charged offenses. *See United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) ("'[e]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence'") (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).

Second, the defendant's possession of these items is not a criminal conviction and therefore does not "bear the imprimatur of the judicial system and indicia of official reliability" of a prior conviction. *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009). And, because the uncharged bad acts were intertwined with the conduct charged in the Indictment, such evidence is less likely to be improperly considered by the jury as propensity evidence. *Id.*

19

Lastly, the proffered evidence will not be confusing or wasteful of the jury's time in any way. To the contrary, as explained above, this evidence actually helps put the evidence regarding the charged conduct in context for the jury and helps explain why the United States military responded in the manner it did. Furthermore, the proffered evidence largely will come from the testimony of witnesses who are scheduled to testify anyway, so this additional testimony from these same witnesses will add negligible time to the trial of this matter.

**B.      Cross Examination Relating to Certain Topics Should Be Limited**

21

22

**III.    Conclusion**

   For all of the foregoing reasons, the Government's motion *in limine* should be

granted.

   Dated: New York, New York
          December 14, 2009

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney

                By:    _____/s/_____
                       Christopher L. LaVigne
                       David Rody
                       Jenna Dabbs
                       Assistant United States Attorney
                       (212) 637-2325/2304/2212