

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 23, 2009

By Courier

Dawn M. Cardi, Esq.
2 Park Avenue
New York, NY 10016

    Re:    United States v. Aafia Siddiqui, 08 Cr. 826 (RJB)

Dear Ms. Cardi:

    Enclosed is supplemental discovery in this matter consisting of the below information and enclosures, which relate to the charges against the defendant and to the competency proceedings. As previously noted, these materials are provided in accordance with the terms of the Court's Protective Order signed on March 12, 2009.

    The Government informs you that immediately prior to, and immediately after, her July 17, 2008 apprehension by the Afghan National Police ("ANP") in Ghazni, Afghanistan, the defendant made various oral statements. These statements are summarized below in substance and in part.

    Initially, the defendant did not respond to questions posed by the ANP in the native language. Thereafter, it was determined that the defendant spoke Urdu, and a translator was utilized. In sum and substance, Siddiqui refused help that was offered to her and provided different versions regarding her purpose in Ghazni. These versions included that the defendant was looking for her husband and family and that she was waiting for another woman.

    The defendant physically resisted the ANP's subsequent attempts to apprehend her, and repeatedly screamed "Allah Akbar." In addition, the defendant repeatedly stated words to the effect of "you are not Muslims/Afghans, you are Americans" and "you are infidels/working for the Americans." The defendant also stated, in sum and substance, that if the ANP turned her over to the Americans, the ANP would be "infidels." In addition, one witness recalls that the defendant admonished the ANP not to touch the boy (her son) who was with her, instructed the boy not to say anything, and referenced a cell phone that she had, which she claimed could result in her and her family being harmed. Two individuals who participated in the defendant's apprehension identified (in late August 2008) the enclosed photograph (726) as that of the woman whom the ANP detained. Two other individuals who participated in the defendant's apprehension were unable to make a positive identification of this photograph (in late August 2008).[1]

---

[1]    As noted in the enclosures, this photograph was shown to other witnesses.

Also enclosed are the following:

- Summaries of statements the defendant made to the FBI on or about June 24, 2002 (727-28);

- Summaries of oral statements, in substance and in part, made by the defendant on July 17 and 18, 2008 to Afghan law enforcement. These oral statements were made while the defendant was in Afghan custody (starting around the evening of July 17) and before the July 18, 2008 shooting (729-43);

- Summaries of additional evidence obtained and examined in this case. These include a search of the location at which the defendant was apprehended by the ANP and a sample of photographs taken of the vicinity of this area (744-64);

- Summaries of negative photograph identifications of the defendant by Afghan shopkeepers as well as summaries of additional evidence obtained/reviewed in this case. (765-76); and

- Print outs of certain additional materials recovered from the defendant's thumb drive (777-79). The Government informs you that the FBI recently interviewed an individual whom it believed may have been the recipient or intended recipient of certain of these messages. In sum and substance, that individual denied ever previously seeing, sending, or receiving these messages.[2]

Please also note that, as referenced in the Complaint, the defendant made several anti-American oral statements and expletives in English, immediately prior to and after the July 18, 2008 shooting. After getting shot, the defendant also stated words to the effect of "just kill me" and instructed United States personnel, in sum and substance, not to touch her blood. In addition, photographs have been taken of many of the Afghan witnesses who have been interviewed in connection with this case and fingerprints have been obtained from many of the individuals who were in contact with the evidence seized in this case. The FBI has also obtained paperwork handled by the defendant while she was studying at Brandeis University, including handwritten notes and computer printouts detailing experiments she conducted. The defendant's thesis has already been provided to counsel and the Government encloses copies of the defendant's transcripts from MIT and Brandeis (780-82).

---

[2] Labels 758-59 and 765-67 have been omitted.

Dawn M. Cardi, Esq.
April 23, 2009
Page 3

We will continue to provide discovery on a rolling basis. And, if you wish to inspect or review any of the evidence seized or obtained in this case, please contact either the undersigned and we will try and make arrangements for you to do so. The Government recognizes its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and will provide timely disclosure if any such material comes to light. The Government will provide Giglio material, if any, at the time it provides prior statements of witnesses pursuant to Title 18, United States Code, Section 3500.

## Disclosure by the Defendant

In light of your request for the foregoing discovery, the Government hereby requests reciprocal discovery under Fed. R. Crim. P. 16(b). Specifically, we request that you allow inspection and copying of: (1) any books, or copies or portions thereof, which are in the defendant's possession, custody or control, and which the defendant intends to introduce as evidence or otherwise rely on at trial; and (2) any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, which are in the defendant's possession or control, and which the defendant intends to introduce as evidence or otherwise rely on at trial or which were prepared by a witness whom the defendant intends to call at trial.

The Government also requests that the defendant disclose prior statements of witnesses she will call to testify. See Fed. R. Crim. P. 26.2; United States v. Nobles, 422 U.S. 225 (1975). We request that such material be provided on the same basis upon which we agree to supply the defendant with 3500 material relating to Government witnesses.

We wish to remind you that Fed. R. Crim. P. 12.2 requires you to provide the Government with written notice if the defendant intends to rely on the defense of insanity at the time of the alleged crime or intends to introduce expert testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offenses charged.

We also wish to remind you that Fed. R. Crim. P. 12.3(a) requires you to provide the Government with written notice if the defendant intends to claim a defense of actual or believed exercise of public authority on behalf of a law enforcement or Federal intelligence agency at the time of the alleged crime.

The Government requests a response to our Rule 12.2 and 12.3 demands within the time period allowed by the Court for the filing of motions.

Dawn M. Cardi, Esq.
April 23, 2009
Page 4

## Sentencing Reduction for Acceptance of Responsibility

Please be advised that unless a disposition is reached on a timely basis prior to trial, this Office reserves the right to oppose the two-point reduction under the Sentencing Guidelines for acceptance of responsibility based upon its untimeliness. See U.S.S.G. § 3E1.1(a).

Please contact the undersigned at your earliest convenience concerning the possible disposition of this matter or any further discovery to which you believe you are entitled.

Very truly yours,

LEV L. DASSIN
Acting United States Attorney

By: _____
David Raskin
Christopher L. LaVigne
Assistant U.S. Attorneys
(212) 637-2635/2325