USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-23-10

United States Attorney
Southern District of New York

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

RECEIVE
AUG 23 2010
CHAMBERS OF
RICHARD M BERMAN
U.S.D.J.

August 23, 2010

RMB By Hand and Request to be Filed Under Seal

The Honorable Richard M. Berman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Clerk to docket + file.

Re:    United States v. Aafia Siddiqui,
       08 Cr. 826 (RMB)

SO ORDERED:
Date: 9/22/10     Richard M. Berman
                  Richard M. Berman, U.S.D.J.

Dear Judge Berman:

        The Government writes in response to the August 18, 2010 letter from the defense. In that letter, the defense provides notice, pursuant to section 5 of the Classified Information Procedures Act ("CIPA"), of its intent to introduce potentially classified information in post-trial proceedings, including in connection with a new trial motion and/or in connection with sentencing. The defense appears to seek the Government's confirmation as to whether a document they reference in their letter (the "Defense Document") is classified and therefore implicates CIPA.

        As an initial matter, and as discussed with Charles Swift, Esq., the Government had not seen (and was not aware of) the Defense Document before trial. The Government first saw the Defense Document after receiving it via email from the defense on July 26, 2010.

        After reviewing the Defense Document, the Government sent it to the United States Department of Defense ("DoD") General Counsel's Office on July 27, 2010. The Government requested that DoD determine whether the Document was authentic and whether DoD had any other information regarding its creation. In response, DoD conducted a diligent search of its records. This search has included contacting multiple DoD employees, and searching various databases and files. On August 19, 2010, DoD advised the Government that one of its employees found a document (the "DoD Document") the substance of which corresponds to that of the Defense Document.[1]

---

        [1]    DoD has advised that the DoD Document is a Significant Action Report. These reports provide information in summary form to the "chain-of-command" regarding significant events, including casualties in the field. While the content of Significant Action Reports vary, they typically are not intended to be a full and complete recitation of facts surrounding an incident. The DoD Document is in a different format than that of the Defense Document. In the event the defense believes that the DoD Document omits any information from the Defense Document that is useful, the Government will seek to reach an accommodation.

DoD has advised that the DoD Document initially was classified "Secret." Accordingly, and at the Government's request, DoD's General Counsel's Office requested that it be declassified. That request was granted on August 20, 2010. The Government has attached as Exhibit A the declassified version of the DoD Document. Accordingly, to use the DoD Document in connection with post-trial proceedings, the Government does not believe that the defense will need to proceed under CIPA.

The Government further advises both the Court and the defense that in the fall of 2008 the Government requested that DoD's General Counsel's Office conduct a thorough search of all DoD records for information relating to this case, and the Government made supplemental requests to DoD to continue this search until shortly before trial. In addition, the FBI (on three occasions) and the Government (on one occasion) traveled to the Forward Operating Base in Ghazni, Afghanistan to investigate the July 2008 shooting and to obtain evidence relating to this case. Through the course of this diligence, the Government obtained, among other things, various written statements of eyewitnesses (including some made by DoD witnesses before they were interviewed by the FBI). These statements were provided to the defense and to the Court as 3500 material for Government witnesses who testified at trial.

As noted above, the Government was never provided with the DoD Document before trial and accordingly did not have occasion to provide it to the defense. Once provided with the Defense Document, DoD recovered the DoD Document – which was not located during DoD's prior searches – by reviewing a DoD database in Afghanistan that contains a repository of Significant Action Reports generated in Afghanistan. After locating the DoD Document, DoD searched the same database for any other information relating to Siddiqui and the charged shooting and found no such materials.[2]

---

[2]     While the author of the DoD Document is not listed or even referenced, DoD advised the Government that portions of the DoD Document relating to the shooting were generated by someone in the Tactical Operations Center of the 506th Infantry Regiment in Ghazni, Afghanistan, after the incident occurred. While the Government and DoD have no reason to believe that any eyewitness wrote this report, we are attempting to find out who in fact generated it. If the Government learns of this information, it will advise the defense by letter. In addition, the Government is aware that its *Brady* obligations extend even after the conclusion of trial, and will timely advise the defense if it learns of any such information.

****

In addition, while the defense does not explicitly seek a new trial in its letter, the Government believes that its characterization of both the DoD Document and the DoD Document's implications at trial warrant a brief response.

Even assuming that the DoD Document was "suppressed" (which the Government does not concede) for purposes of a *Brady* and/or new trial analysis, the Government submits that the DoD Document could not have affected the outcome of the trial and in no way undermines confidence in the verdict. *See United States* v. *Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) ("[U]ndisclosed evidence will be deemed material only if it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'") (quoting *Kyles* v. *Whitley*, 514 U.S. 419, 435 (1995)); *United States* v. *Locascio*, 6 F.3d 924, 949 (2d Cir. 1994) (holding that new trial is warranted only if newly discovered evidence "is material, noncumulative, and would probably lead to an acquittal") (internal quotations omitted); *United States* v. *Thai*, 29 F.3d 785, 805-06 (2d Cir. 1994) ("In order to gain reversal as a result of a *Brady* violation, a defendant must show a reasonable probability – one sufficient to undermine confidence in the outcome – that the jury would have resolved the defendant's case differently had the prosecution disclosed the evidence on a timely basis.") (internal quotations and brackets omitted); *United States* v. *Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (holding that courts should grant new trial motions only if there is "a real concern that an innocent person may have been convicted" and that such motions should be granted "sparingly" and in only "the most extraordinary circumstances").

Among other things, the DoD Document – which is hearsay and is not admissible – states that Siddiqui obtained a weapon, pointed it at investigators, and was shot in self-defense. While the DoD Document does not state that Siddiqui fired the weapon, the acts it does attribute to Siddiqui – picking up a weapon and pointing it at United States personnel – are consistent with the facts elicited at trial and are sufficient to establish that Siddiqui engaged in a substantial step for attempted murder. In fact, although the Government argued – and maintains – that Siddiqui fired the M4 rifle, the Government also argued that a "substantial step" for attempted murder was fulfilled simply "when the defendant picked up that rifle, aimed it and intended to kill people in that room." (Tr. at 1969.).[3]

Moreover, the defense's theory at trial was not that Siddiqui picked up the M4 rifle, pointed it at United States personnel, but never intended to fire it. Rather, the defense theory was that Siddiqui never picked up the gun; a theory that is contradicted by the content of

---

[3]     The remaining counts of the Indictment (counts 3-7) do not require that Siddiqui fired the M4 rifle or attempted to fire the M4 rifle. As the Government argued to the jury, Count 3 was satisfied when "[Siddiqui] picked up an M4 rifle, which is a deadly or dangerous weapon, she pointed it in the room, and she made everybody in fear for their lives." (Tr. at 1970.)

the DoD Document. Indeed, Siddiqui testified unequivocally that she never picked up the gun. Siddiqui testified that she heard Americans enter the room, that she approached the curtain and peeked behind it in order to escape, and that she was shot by a soldier standing on the opposite side of the room. (Tr. at 1716-17, 1739-40.) The DoD Document in no way, shape, or form corroborates this version of events.

Lastly, the verdict in this case is not "already of questionable validity." (Def. Letter at 4.) In addition to other evidence, six eyewitnesses saw (and three eyewitnesses heard) Siddiqui obtain and fire the M4 rifle, which is overwhelming proof of her guilt. Moreover, the DoD Document corroborates the Government's theory that Siddiqui in fact picked up the gun, aimed it at United States personnel, and was shot in order to save the lives of individuals in the room. Indeed, suggesting that the Government's witnesses lied under oath by testifying that Siddiqui picked up, pointed, and then fired the gun at United States personnel – as opposed to testifying just to the DoD Document's abbreviated version that Siddiqui picked up the gun, pointed it at United States personnel, and was shot in self-defense – is beyond a stretch.

The defense has not made a new trial motion, however, and the Government will respond to any post-trial motions or additional sentencing arguments within the time prescribed by the Court.[4]

Very truly yours,

PREET BHARARA
United States Attorney

By: _____

Christopher L. LaVigne
Jenna M. Dabbs
David M. Rody
Assistant United States Attorneys
(212) 637-2325/2212/2304

cc:    Defense Counsel (by facsimile)

---

[4]    Because this letter references the prior defense submission (which was submitted under seal), and because it references DoD's prior classification, the Government respectfully requests that it be filed under seal.

# Exhibit A

CIDNE (2.1.4.3) - (CIDNE AMN (CX) Bagram) - Combined Information Data Network
ExchangeSystem **UNCLASSIFIED**
Level Classification: ~~SECRET //-REL TO USA, ISAF, NATO~~ View ReportReport
Actions:    Other Options E-Mail Report Subscribe to Report Subscribe To
  Report Export to word
        Report References Remarks Media Associations LinkAnalysis Changes


    SIGACT Report
            Title:(FRIENDLY ACTION) DETAINED RPT TF RED CURRAHEE : 1 UE DET
            Tracking Number:20080718153042SVC4646312421Report Precedence:Not
            Reported
            ISAF Tracking Number:CENTRIX
            Classification:SECRETReleasability:REL TO USA, GCTF, ISAF, NATO
            Reporting Unit Name:TF Currahee SIGACT Manager S-3Report
            Source:Coalition
            Report

URL:http://22.240.72.205/?module=operations&reporttype=SIGACT&reportkey=389D588F-AC1
C-7149-9F8D2AE15A722142
    SPOT SectionUnit Name Involved:TF RED CURRAHEECall Sign:ISAF #07-844
            Type of Involved Unit:CFInvolved Unit Activity:Other
            Incident Reported By:Coalition ForcesBattlespace Lead:Coalition
            DTG of Incident (Local Time):2008-07-18 15:30:00.0DTG Updated (Local
            Time):2008-07-19 03:33:00.0
            LocationMGRS:42SVC4646312421  Route:Not Reported
                Province:GhazniRC:RC EAST
                District:GhazniAO:A COI
                City:Ghazni

        Events   Event Type:Friendly ActionModes Of Attack:
                Event Category:Detained


        Coordinated Attack:No
        Complex Attack:No
        Counter Attack:No
        MEDEVAC Requested:No
        Associated Organizations

        SIGACT SummarySummary:42SVC 46463 12421

            UNIT: TF RED CURRAHEE
            GHAZNI ANP

            TYPE: ARREST

            TIMELINE:
            AT 1530Z, while leaving work, Ghazni ANP colonel Ghani Khan
            and his security detail discovered a woman and teenage boy
            after dark loitering/acting suspicious IVO the Ghazni
            Governors Compound. Upon questioning, the woman did not
            respond to Dari or Pashtu and appeared to only speak Urdu. The
            woman began to react abnormally and scream Allah Akhbar when
            ANP officers approached her. As she was being restrained,
            papers from her purse fell on the ground some of which
            containing the word bomb. The woman was taken in for
            questioning at the ANP HQ in Ghazni City. A search of her
            personal items revealed a purse containing numerous documents
            on how to build explosives, chemical weapon use, targeting US
            military assets, excerpts from the Anarchists Arsenal and a
            1GB thumb drive with additional related material. The woman

RED CURRAHEE SIGACT 2008.txt
also had unknown chemical materials sealed in containers in
her purse. A great deal of the evidence is in English.
According to documents found on the thumb drive the woman may
be western educated (12 years in the US), an MIT graduate with
a bachelors in Biology and a masters/PHD in Neuroscience. The
woman is currently being held by ANP in Ghazni City and has
not been questioned by US forces as of yet. The evidence has
been collected and cataloged by 1-506 S2. The Governor of
Ghazni has personally questioned at which point the suspect
admitted to being there with the intent to kill him and
Americans. The Governor intends to hold a press conference in
the morning. President Karzi has been notified by the Ghazni
Governor.

UPDATE: 18 1300Z, WHILE BEING QUESTIONED, THE FEMALE GOT A
HOLD OF A WEAPON, POINTED THE WEAPON AT THE INVESTIGATORS AND
AN INVESTIGATOR SHOT THE FEMALE IN SELF PROTECTION. FEMALE
WILL BE MEDEVACED TO ORGUN-E.
FEMALE WILL BE ESCORTED BY 4 X RED CURRAHEE SCOUTS AND 2 X FBI
AGENTS.

THIS EVENT IS STILL OPEN, CURRENTLY CONDUCTING AN
INVESTIGATION.

SUMMARY:
ARREST
MM(E) 07-18D

EVENT CLOSED AT 2006Z
        EnemyCoalitionCIV-NGO-ASGHost Nation
                KIAWIADET
                0 0 1
                KIAWIAABD
                0 0 0
                KIAWIAABD
                0 0 0
                KIAWIAABD
                0 0 0


PIR/CCIR Status
    Capture Details
    Casualty Details
    BECIRClick Add to draft a new BECIR in connection with this SIGACT.
    BECIR will open in a new window.  Add
    BECIR View Classification:Not ReportedReleasability:Not
        Reported
        SIGACT Tracking Number:Not Reported# Individuals Exposed:Not
        Reported
    Individuals
        No Individuals Reported

    Target(s) of Attack
    Vehicle/Convoy Details  Number of Vehicles:0Distance Between
        Vehicles:0 Meters
        Convoy Speed:0 MPHNearest ECM Dist to IED:0 Meters
        Nearest ECM Dist to Vehicle Struck:0 MetersOther
        Countermeasures on Vehicle Struck:Not Reported
        Vehicle Summary:Not Reported
        Individual Vehicle Details

    DRUGREP Details  Facility Type:Not Reported
                        Page 2

RED CURRAHEE SIGACT 2008.txt
Drugs Found
Chemicals Found
Equipment Found

ReintegrationReintegration Open: No

Collection Name:

Cancel

Declassified by: BG Robert P. Ashley
HQ,USCENTCOM Director of Intelligence
20 August 2010